ADELE GIARDINI, ADMINISTRATRIX, &c., RESPONDENT, v. WILLIAM G. McADOO, DIRECTOR-GENERAL OF RAILROADS, APPELLANT.

Argued March 7, 1919—Decided June 20, 1919.

Plaintiff, the widow, obtained letters of administration in this state upon the estate of her deceased husband, and brought suit in the Camden Circuit Court under the New Jersey Death act against the director-general of railroads for damages arising from the death of her husband while a passenger on a train of the Pennsylvania Railroad Company, in the State of Pennsylvania, for the benefit of herself, as widow, and her children, who were next of kin of her deceased husband, and had a verdict, upon which judgment was entered. It was alleged in the complaint, and the testimony disclosed, that the accident resulting in the death of decedent occurred in the State of Pennsylvania, and, therefore, the Death act of our state does not apply. But as the record discloses no objections made to parties or pleadings, and that issue was joined and the case was tried upon its merits; and as on this appeal objection is made for the first time that the action does not lie in this state, it is *held*, that it does, and that the judgment should be sustained, with the exception of the *quantum* of damages; and that the case should be remitted to the court below with leave to the plaintiff to apply for, and direction to that court to grant, appropriate amendments to the proceedings, so as to bring the cause within the provisions of the Death act of Pennsylvania, which are given effect here by comity, and to then grant a new trial on the question of damages only, the award being excessive, because in the verdict was included a recovery for not only the widow but also the next of kin of deceased, while the statute of Pennsylvania allows it only for the benefit of the widow.

On appeal from Camden County Circuit Court.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *Albert S. Woodruff.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This appeal is from a judgment upon a verdict for plaintiff at the Camden Circuit, and defendant appeals to this court. No objections were made as to parties or pleadings. Issue was joined and the case was tried upon its merits.

The facts are: William Giardini, the husband of Adele Giardini, was killed by a train in the tunnel approach to the West Philadelphia, Pennsylvania, station of the Pennsylvania railroad system, on the evening of February 1st, 1918. He resided in Camden, New Jersey, and worked at Essington, Pennsylvania. As was his custom he boarded a Philadelphia train leaving Essington that afternoon. The train was scheduled to make no stops until the West Philadelphia station was reached. It consisted of coaches equipped with vestibule doors, and traps closing over the steps, so that the platforms could be kept entirely closed while the train was in motion. These precautions had been taken on other occasions when Giardini had been a passenger on the train. Giardini rode standing just outside of a car door on its front platform. That car and the one in front were so filled with passengers that many could not enter and were forced to remain out on the platforms. The conductor passed through the train and took the tickets of the passengers on the platforms. Neither vestibule doors nor the step coverings were closed. Just before the train reached the station at West Philadelphia it stopped for a moment, and the passengers apparently believing it to be the station-stop, pushed out of the cars. Giardini was crowded off the platform and down the steps. Had the vestibule doors been closed and the trap shut he could not have been forced off the train. There was no train hand at either of the platforms; no warning was given of a pre-

mature stop, and the train again and almost immediately started without warning. Giardini's dismembered body was later found at that point, distant about three hundred and sixty feet from the passenger platform.

The grounds of appeal are—(1) because the trial judge refused to direct a verdict against the plaintiff and in favor of the defendant at the close of the testimony in the case; (a) because there was no proof of negligence on the part of the defendant; (b) because the defendant assumed the risk of injury. (2) Because the court refused to charge that where a person boards a crowded train and is unable to enter the cars and rides on a platform he assumes the risk, and, if jostled off the train by the crowd, there can be no recovery. (3) Because the declaration and record in the cause fail to show a right in the plaintiff to prosecute this suit. (4) Because the declaration and record show that there is no right of recovery in the plaintiff. (5) Because the declaration and record fail to show a right of recovery against the defendant in New Jersey, for an injury and death which occurred in Pennsylvania. (6) Because it appears from the declaration and record that there is no right of recovery against the defendant.

As to the first reason assigned for reversal, the judgment should not be disturbed if there were any proof of negligence on the part of the defendant company, and not unless it be shown as matter of law or fact that the defendant assumed the risk of injury. There was such proof, and assumption of risk was not shown.

The law of Pennsylvania is applicable in this case; being enforced here by way of comity. *Lower* v. *Segal*, 59 *N. J. L.* 66. Joseph Conwell, Esquire, a member of the bar of that state, practicing in Philadelphia, was sworn for the plaintiff and testified that he had made an examination of the law of Pennsylvania with respect to the duty of a common carrier in the circumstances of this case, and that that duty is to exercise the strictest vigilance, not only in carrying the passenger, but in setting him down at a station, and that it is also the duty of the carrier to announce the name of the sta-

tion, and when it has been announced, if the train stops prior to arriving at the station, or if it goes beyond, it is the duty of the carrier to warn the passengers not to alight, and if the carrier fail to do so, it is liable in damages for the consequences of the negligence; that if a passenger is permitted to remain on the platform of a car, and has paid his passage, the carrier owes him a greater degree of safety; that a passenger does not assume the risk in boarding a crowded train; if the carrier permits him to remain there it would be liable for the neglect to carry him safely.

Clarence P. Culin, Esquire, likewise a member of the Pennsylvania bar, practicing in Philadelphia, was called by the defendant and gave testimony as to the state of the law of Pennsylvania bearing on the question at issue between the parties. Quite aside from any conflict between his testimony and that of Mr. Conwell—and the law of the foreign forum was to be found by the jury as a fact (*Fithian* v. *Pennsylvania Railroad Co.*, 91 *N. J. L.* 275)—Mr. Culin, in response to a question on cross-examination, which assumed that there were doors and platforms on the car in question, was asked if he did not think the law would hold that the company ought to close them, and he replied that the highest degree of care would require the closing of the doors and platforms.

In the situation of the proofs to which the first ground of appeal is pertinent, the case was properly submitted to the jury, and it was not error for the trial judge to refuse to direct a verdict for defendant.

Mr. Conwell testified, as already stated, that according to the law of Pennsylvania a passenger does not assume risk on boarding a crowded train, and that if the carrier permits him to remain there it would be liable for neglect to carry him safely. As the jury were by law required to consider this testimony on the question of negligence, the judge did right in refusing to charge the jury that where a person boards a crowded train and is unable to enter the cars and rides on a platform he assumes the risk, and if jostled off by the crowd, there can be no recovery for injury thus inflicted. The second ground of appeal is therefore untenable.

The sixth ground of appeal is but a reiteration of the third and fourth. The three grounds, numbered from three to five, inclusive, are argued together in the brief of counsel for appellant. And this because they raise, practically, the same question—that is, whether or not the cause of action prosecuted in this case lies at all in this state. In support of the contention that the action does not lie, counsel for the defendant-appellant relies upon *Lower* v. *Segal,* 59 *N. J. L.* 66, and *Rankin* v. *Central Railroad,* 77 *Id.* 175.

Before examining into this question it may be well to state what the pleadings disclose, and also what the insistence is, to the effect that the right of action for damages resulting from the death of the deceased, if any, arose under, and is governed by, the law of the State of Pennsylvania, and is unenforceable here.

The pleadings, shortly, disclose that on February 1st, 1918, the defendant corporation operated a steam railroad from Chester to Philadelphia, in Pennsylvania, and at Philadelphia maintained a tunnel for its tracks, and the passage of its trains, underneath the city streets, and, also, a station with platforms, where passengers were received and discharged, at Thirty-second and Market `streets; that on the evening of the day named, William Giardini, plaintiff's intestate, who was also her husband, boarded a train at Eddystone, between Chester and Philadelphia, and became a passenger to the station mentioned, in the latter city; that the train was a through one, scheduled to make no stops between Eddystone and the Philadelphia station; that when prematurely it stopped in the tunnel, Giardini, through the sole negligence of the defendant, its servants and agents, was run over by the train when it again started, was crushed and killed; that the negligence of which defendant was guilty, consisted in the fact that the vestibule door and platform of the car on which deceased was a passenger were permitted to be and remain open, and the car to be overcrowded with passengers, and no agent or servant of the company was at or upon the platform to protect Giardini from being pushed therefrom by such overcrowding; that no warning was given by defend-

ant, its servants or agents, that the stop was not for the pur-
pose of having its passengers alight, and the train was again
started without warning being given or care being taken as to
passengers who might have alighted by mistake or been
forced from the train by overcrowding; that Giardini left
him surviving his widow, Adele Giardini, the plaintiff, and
five minor children; that letters of administration *ad prose-
quendum* were granted to the plaintiff on July 24th, 1918,
by the surrogate of Camden, and plaintiff claimed damages.
The answer, after admitting and denying certain statements
of fact in the complaint, pleaded two grounds of defence—
*first*, that there was no negligence on the part of the defend-
ant, its servants, agents and employes in the premises, and
*second*, that there was contributory negligence on the part
of the plaintiff's intestate. Upon issue joined on these plead-
ings the parties went to trial. The testimony disclosed
that the accident, resulting in the death of Giardini, oc-
curred in the State of Pennsylvania.

As at common law no action would lie for damages result-
ing from the death of a person, such right, where it exists,
is created only by statutory enactment. We have such a
statute in this state. *Comp. Stat., p.* 1907, § 7. Under it
every such action may only be brought by and in the names
of the personal representatives, and distribution is made to
the widow and next of kin for whose benefit suit is brought,
in the proportion provided by law in relation to the distribu-
tion of personal property left by persons dying intestate. No
similar statute of Pennsylvania was pleaded, nor does the
brief of counsel for appellant suggest any, except as it is dis-
closed in the cases in our state cited on their brief. In the
grounds of appeal the question of jurisdiction is raised for
the first time. On oral argument, however, it was stated and
conceded that there was a Death act in Pennsylvania under
which the widow, when she survives, and not the personal
representative, is given the right to sue, the recovery being
for her benefit.

In Lower *v.* Segal the plaintiff, an administratrix ap-
pointed in this state, sued for the recovery of damages grow-

ing out of death caused by wrongful act. The cause of action arose in Pennsylvania, and the plaintiff was confronted with a demurrer to the declaration. It was held by the Supreme Court that the Death act of Pennsylvania conferred no right to sue in this state, but that as that statute was not repugnant to our domestic policy, as evinced by our having modified the common law upon like principles, it was, therefore, the duty of our courts to recognize and enforce the rule of the sister commonwealth; but, as the right of action was vested in the widow, she was the only person who could maintain the suit, whether in the domestic tribunals or elsewhere, and that, therefore, it was clear that the plaintiff could not, as administratrix, maintain the action there *sub judice,* and the demurrer was sustained. This case was again before the Supreme Court on application to amend the proceedings so that the action might appear to have been brought by the plaintiff, as widow, instead of as administratrix, of the deceased. And it was held that such amendment would not tend toward the determination in that suit of the real question in controversy between the parties, but would operate to institute a new suit between different parties, although the complainant was both widow and administratrix of the deceased, and would present other questions; that it was not an amendment that the court *was required* to make; and, further, that the amendment would be unreasonably vexatious to the defendant, for it appeared on the face of the declaration that the action was not brought within the period limited by the law of Pennsylvania for the bringing of such action.

In Rankin *v.* Central Railroad Co. the suit was instituted in our Supreme Court by the administratrix of the deceased person for damages under the Death act, where, as here, the death charged to the negligence of the defendant happened in the State of Pennsylvania, and where, as seen, only the widow, if surviving, is entitled to prosecute an action for such damages. The report of the case does not disclose what the pleadings were, but it does disclose the fact that the plaintiff was nonsuited for neglect to notice the case for trial

at the Circuit Court. The plaintiff obtained a rule to show cause why the judgment of nonsuit should not be vacated, and on the hearing of that rule it was decided on the authority of *Fitzhenry* v. *Consolidated Traction Co.*, 63 *N. J. L.* 142, and *Lower* v. *Segal,* supra, that for want of an amendment which the court would not have allowed if applied for, the plaintiff had not stated a cause of action and a nonsuit would ultimately follow, and, under such circumstances, the judgment of nonsuit should not be opened, and the rule to show cause was discharged.

In Fitzhenry v. Consolidated Traction Co. a father, by his name only, commenced an action in our Supreme Court for damages resulting from the death of his son by the alleged negligence of the defendant. The summons was issued in his name, and the declaration claimed damages, not as administrator, but as father, for the loss of the services of his son. No grant of letters of administration was averred. To the declaration a demurrer was filed. The father then obtained administration upon the estate of his deceased son, and a motion was made to amend by adding proper and apt words to describe him as such administrator. It appeared on the face of the declaration that the action was barred by the statute of limitation at the time the motion to amend was made; and the Supreme Court held that by the proposed amendment the defendant would be deprived of its right to plead proper and substantial defences, including the bar of the statute, not mentioning any other defences, citing *Lower* v. *Segal,* 60 *N. J. L.* 99.

The cases of *Lower* v. *Segal, supra,* and *Fitzhenry* v. *Consolidated Traction Co., supra,* are ones in which the questions raised were decided upon demurrer; and there can be little, if any, doubt but that if a motion to strike out had been interposed *in limine* in the case at bar, it would have been granted. But the question is, Are we precluded from permitting a proper amendment at this time, and must we reverse the judgment resulting from a trial upon the merits, because, on appeal, for the first time, the defendant raises the jurisdictional question?

In *Rankin* v. *Central Railroad Co.*, 77 *N. J. L.* 175, as stated, the pleadings are not disclosed, but it conclusively appears that there was no trial on the merits, that a judgment of nonsuit resulted from a failure to prosecute the cause in not bringing it on for trial. Although it is stated in the opinion of the Supreme Court in the Rankin case that the court would not have allowed the amendment if applied for, that must be taken as a decision, to the effect that the amendment would not have been allowed if applied for *before trial.* It is not a decision that an amendment would not have been allowed in aid of a verdict after trial on the merits, and, besides, it does not foreclose a decision of the question in this court.

Our Practice act of 1855, in section 46, provided that in order to prevent the failure of justice by reason of mistakes and objections of form, the court, or a judge, at all times, might amend all defects and errors in any proceedings in civil actions; and all such amendments as might be necessary for the purpose of determining in the existing action the real question in controversy between the parties should be made. This is the present section 126 of the Practice act of 1903. *Comp. Slat., p.* 4091.

The Supreme Court in interpreting this section, in *City of Hoboken* v. *Gear,* 27 *N. J. L.* 265, held that it extended to the introduction of matters which the parties hoped or intended to try in the cause and was not limited to matters within the issue upon the record. Surely, the issue that the parties to the case *sub judice* hoped and intended to try was the merits of the complaint, namely, whether or not the defendant was responsible for the death of Giardini, and, consequently, liable to respond in damages for his death.

The Supreme Court, in *Price* v. *N. J. R. & T. Co.,* 31 *N. J. L.* 229, held that the effect of this statutory provision authorizing amendments was to enable the parties to try matters which they contemplated trying, or to sustain the decision resulting from such trial. Chief Justice Beasley, speaking for the court in this case, said (at *p.* 232) :

"It certainly cannot be denied, that the power thus granted is conferred in very comprehensive terms. It is, 'all defects and errors,' which the court are to possess the right to amend, and such amendments can be made 'at all times.' The only restriction on this grant of authority is that which may be implied from the purpose for which it is to be used; that is, only such amendments are to be made as may be necessary to determine, in the existing suit, the real question in controversy between the parties."

In addition to the provision in the Practice act of 1903 regarding amendments, there is section 23 of the Practice act —(1912) *Pamph. L., p.* 377—which provides that no civil suit or proceeding in any court of common law shall fail or be dismissed on the ground that the plaintiff or any party therein has mistaken the remedy or procedure if the court in which the matter is pending shall have jurisdiction to grant the proper remedy by any procedure; but in such case the court shall, upon terms, order writs, pleadings or other proceedings to be so amended, or new writs, pleadings or other proceedings to be respectively so issued, filed or taken that the court may completely and finally hear and determine the whole matter in controversy between the parties and grant the proper remedy. That is not all: In the Practice act (1912), section 8, it is provided that where a person, not a party, has an interest which the judgment will affect, the court, on his application, may direct him to be made a party; and, in section 9, new parties may be added, parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require.

We incline to the opinion that under the provision of the Practice act of 1903 concerning amendments, as interpreted in City of Hoboken *v.* Gear, and other cases, an amendment of these proceedings might be ordered by substituting the name of Adele Giardini, the widow, as plaintiff, and striking out the description of her representative character, and also by striking out the reference to the next of kin left by the deceased; but, whether so or not, the provisions of the Practice act of 1912 are broad enough to permit of its being done.

And·these statutes, as is known, are to be liberally and bene-
ficially expounded; and every intendment that can be,
should be, made in aid of a judgment and verdict thereon,
where the parties have gone to trial upon the merits of the
case and where no attack has been made upon the pleadings
and procedure prior to appeal. *Price* v. *N. J. R. & T. Co.,
supra.*

Surely, the provisions in the Practice act (1912), thàt a
person not a party, who has an interest which the judgment
will affect, may be made a party, and that a party may be
added at any stage of the cause, will justify the amendment
of this record, in view of the still further provision of that
act, that no civil suit shall fail on the ground that the plaint-
iff has mistaken the remedy or procedure, if the court has
jurisdiction to grant the proper remedy by any procedure.
And surely the Camden Circuit Court had jurisdiction to
try the issue between Adele·Giardini and the Pennsylvania
Railroad Company, concerning her husband's death through
the negligence of defendant's servants in Pennsylvania, with
recovery regulated by the Death act of that state and en-
forceable here by comity.

· Nor have we overlooked the fact that in *Lower* v. *Segal,
supra,* the Supreme Court held that an amendment would
be unreasonably vexatious to the defendant in that case be-
cause it appeared that the action was not brought within the
period limited by the' laws of Pennsylvania, which was fol-
lowed in *Rankin* v. *Central Railroad Co.* and *Fitzhenry* v.
*Consolidated Traction Co.* In the case at bar the situation
is the same to this extent, if an amendment were not allowed,
and the judgment were reversed without a *venire de novo,*
the plaintiff, apparently, would be remediless, because the
limitation under the Pennsylvania statute for bringing this
sort of action is one year, which has already expired. But
it must be conceded that all *proper* amendments may be
made, irrespective of the defences which they would bar;
and the only question here is, whether the fact that the
statute of limitation in Pennsylvania would bar this action
if it were commenced *de novo* is controlling. Whether or

not it was under the law as it stood prior to the Practice act (1912), it cannot be argued with any show of reason that the beneficent provisions for amendment in the latter act are unenforceable in the presence of such a situation. On the contrary, they are entirely applicable, and, in and of themselves, quite dispositive of the question.

There is, however, an error in the record before us which is patent, and that is that the jury having tried the suit of the administratrix against the defendant, recovery in which suit under our statute must have been for the benefit of the widow and next of kin (children) of the deceased, allowed damages for those children, when, by the law of Pennsylvania governing the action, recovery could be had only for the benefit of the widow. The verdict rendered, upon which the judgment before us was entered, is, therefore, excessive; and were it not for rule 73 annexed to the Practice act (1912), now rule 132 of those of the Supreme Court (1913), it would be necessary for us to reverse this judgment *in toto* and order a new trial after allowing proper amendments to be made; but, by that rule, it is provided that when a new trial is ordered because the damages are excessive or inadequate, the verdict shall be set aside only in respect to damages and shall stand good in other respects. This operates to save to the plaintiff, as widow, the benefit of the verdict on the question of defendant's liability, but there must be a new trial as to damages, for the reason above pointed out. And by rule 147 of the Supreme Court (1913), rule 132 is expressly made to apply to appeals.

The result reached is, that the judgment under review will be sustained, with the exception of the *quantum* of damages recovered. The cause will be remitted to the Circuit Court with leave to the plaintiff to apply for, and direction to that court to grant, appropriate amendments to the proceedings, as above pointed out, and to then grant a new trial on the question of damages only.

As the judgment is to "stand good" on the question of liability, it will be affirmed in that respect, and, as a "new trial" is ordered because the damages are excessive, it will be reversed to that extent.

*For affirmance*—None.

*For reversal*—BERGEN, WILLIAMS, JJ.   2.

*For modification*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, HEPPENHEIMER, TAYLOR, GARDNER, JJ.   10.