HARRY MARTIN, PLAINTIFF-APPELLANT, v. LEHIGH VAL-
LEY RAILROAD COMPANY, DEFENDANT-RESPOND-
ENT.

Submitted October 26, 1934—Decided January 10, 1935.

For the plaintiff, *Robert H. Doherty.*

For the respondent, *Collins & Corbin* (*Edward A. Markley*
and *Charles W. Broadhurst,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.  This appeal brings up for review an order
discharging plaintiff's rule to show cause why a discontinu-
ance filed in this case should not be stricken from the files
and decreed for nothing holden.

On notice of the motion below, with the reservation that there was no such action pending as the one herein captioned, and that the court below had neither the jurisdiction nor authority to reinstate the same, or to grant the relief prayed for, it was stipulated and agreed between present counsel for the respective parties that the affidavits of both sides should be considered by the court with the same force and effect as though the facts therein contained were testified to on depositions of the witnesses under said rule to show cause; a like stipulation as to the effect of the affidavits to be used on the return of the rule to show cause, was also made between the same counsel.

These affidavits are presented in full and disclose, substantially, this situation: Paul Koch, attorney of this state, instituted a suit at the Hudson County Circuit Court and erroneously styled or captioned it Harry Martin v. Lehigh Valley Railroad Company.

Notwithstanding the concluding comment of counsel for the defendant "if the defendant had scrutinized the entire complaint and perhaps used its imagination" it would have understood that the party who was seeking to bring the suit was Margaret Jane Martin, widow of Harry Martin, and not Harry Martin, nevertheless, the fact is that the complaint requires very little scrutiny or use of the imagination to determine that it was the widow who was seeking to recover damages for the death of her husband arising out of an accident in Pittston, Pennsylvania. That was obvious; the tenuous argument to the contrary lacks any weight or persuasion.

The complaint sets forth that "plaintiff is the widow of Harry Martin;" "plaintiff's intestate was riding in a car driven by his son * * * the locomotive * * * struck the car in which intestate was riding * * * inflicting injuries upon the intestate which caused his death." "Intestate left surviving him as his next of kin plaintiff * * *." Nothing could be clearer but that an error has been made in the styling or captioning of the cause.

Attorneys for the defendant (by their representative, Mr.

Broadhurst, who had charge of the cause) filed a demand for security for costs. Thereupon the attorney for the plaintiff discovered this error but the Pennsylvania statutory limitation of one year, applicable to the instant suit, had already run. The attorney for the plaintiff prepared and caused to be served an amended summons and complaint and in reply to his communication to the attorneys for the defendant received the following reply:

"The amended summons and complaint was served on us by the sheriff's office, but the point that we raise is that all action on the original suit of Harry Martin v. the Lehigh Valley Railroad Company was stayed when we demanded security for costs in that action. It being stayed you could not file and serve an amended summons and complaint. You could, of course, serve and file an original complaint.

"If you desire to discontinue the case of Harry Martin v. Lehigh Valley Railroad Company without costs, we will consent to the same and abandon our present motion. *The second summons and complaint would then be considered an original suit and upon your filing security for costs* would proceed as though it was an original suit." (Italics ours.)

Plaintiff's attorney answered:

"Thank you for your letter with respect to the above entitled matter. I will be glad to discontinue the case of Harry Martin *and consider the matter of Margaret Jane Martin as the original suit.* I am getting the necessary bond for you; will have the same within the next day or so and file it with you." (Italics ours.)

Defendant's attorney replied:

"In view of your willingness as expressed in your letter of December 3d to discontinue the suit of Harry Martin v. the company, we are preparing and send you herewith original and two copies of such discontinuance. If you will sign the original and copy, returning them to us, we will file the same. The other copy you may retain for your file.

"Assuming that the discontinuance is returned and signed by you, then the motion will be considered abandoned. If not, it will be on for December 9th."

Plaintiff's attorney responded:

"I enclose herewith a discontinuance in the above entitled matter. Thank you for your courtesy herein.

"The bond in Mrs. Martin's case will be in your hands within the next few days."

The discontinuance reads as follows:

"It is hereby ordered that the above action be and the same is hereby discontinued without costs to either party as against the other."

It was not signed by the judge.

Respondent's attorneys, however, moved to strike out the complaint on the ground that it failed to allege the Pennsylvania Death act and that the plaintiff failed to comply with the conditions precedent to the bringing of such action under the said statute. By the latter contention, defendant was, obviously, setting up the bar of the statute of limitation. After some delay, present counsel was substituted for plaintiff's first attorney, and he promptly moved to set aside the discontinuance and to amend the pleadings so as to set forth the Pennsylvania statute and the correct name of the plaintiff. The trial judge refused this application and plaintiff appeals.

We are met, *in limine,* with the primary question whether an appeal lies from the order discharging the rule to show cause. We think, under the clear and convincing proofs herein, that it does.

The law applicable is well settled. Matters resting in the discretion of the courts are not, in general, subject to review in appellate courts, unless an abuse of discretion is shown. *State, Newell et al.,* v. *Bassett et al.,* 33 *N. J. L.* 26; *Gaffney* v. *Illingsworth,* 90 *Id.* 490, 493; *Robinson* v. *Payne,* 99 *Id.* 135, 142; *Gormley* v. *Gasiorowski,* 110 *Id.* 287, 289; *Diamond Rubber Co., Inc.,* v. *Feldstein,* 112 *Id.* 514, 518. Obviously unless the widow can be relieved of the order the force and effect thereof would be that "the defendant go thereof without day." Our study of the proofs leads us to the firm conclusion that an abuse of discretion, in the discharge of the rule to show cause, is clearly shown.

Having concluded that an appeal does lie from the order, we approach the next question—Did the court err in refusing to strike the discontinuance? We think that it did.

Whether it be counsel's aversion to "a suit brought by a resident of Pennsylvania where the accident happened in Pennsylvania, in the courts of New Jersey" notwithstanding that it has been repeatedly held that such a resident has the right to prosecute such a suit (*Kopenhafer* v. *Pennsylvania Railroad Co.*, 106 *N. J. L.* 530; 148 *Atl. Rep.* 629), or whatever their motivating reason or reasons might have been, it is apparent that the plaintiff's attorney was clearly misled in the belief, by the correspondence of defense counsel, that upon the filing of a discontinuance an amendment such as would cure the defects, would be permitted by them. If this were not so it is difficult, if not impossible, to understand the point to the termination of the action. As already stated, if the court is powerless to grant the relief sought the effect is to destroy the widow's alleged cause of action. She never consented to it and her attorney never intended it to have that effect. Every instinct for the attainment of substantial justice urges and impels the granting of the relief sought. Substantial rights are involved. The goal is not unattainable.

This court has control of the cause of action, the pleadings and the stipulation. If a judgment may be opened and vacated, pleadings amended and withdrawn, warrant to satisfy a judgment be set aside—all, of course, on good and legal cause shown, it would appear to follow that a discontinuance filed, as in the instant case, may also on good and legal cause shown, be withdrawn. There is nothing inviolable about an order of discontinuance. Reduced to its simplest terms it is nothing more or less than an agreement between respective counsel without the express sanction of the court. We are not to be understood as disapproving the general practice of the bar in entering a discontinuance by consent of counsel. That practice has much that can be said in favor of it. We approve of it. Although such a discontinuance is entitled to, and receives, recognition by our courts, it is not, however, any more than any other pleading in a cause,

beyond attack. And, if upon proper application it is made to appear that mutuality is lacking or that substantial rights of a client, as herein, have been sacrificed, this court will take hold and treat it accordingly. Such has been, and is, the declared policy of our courts.

In the case of *Hygrade Cut Fabric Co.* v. *United States Stores Corp.* (*Court of Errors and Appeals*), 105 *N. J. L.* 324, plaintiff sued for $1,400; defendant answered that only $614 was due, alleging that it had tendered the same, and it paid it into court; thereupon an order was made in the Circuit Court authorizing the clerk to turn over to plaintiff's attorney the amount so deposited, but containing no further direction; thereafter, a subsequent order was made directing the return of the check by plaintiff's attorney and the order authorizing its payment to him was vacated; and this on the ground that the former order was improvidently requested by attorney and that the plaintiff had at no time instructed him to make the application to turn over the money, and that plaintiff might have a good cause of action for the balance due. Chancellor Walker, for this court, reviewed the cases on the subject and on page 329 said:

"In *Howe* v. *Lawrence*, 22 *N. J. L.* 99, it was held by the Supreme Court that agreements made by attorneys and counsel, as to the manner of conducting a cause, will be respected and enforced by the court; but such agreements are not legal contracts, and are under the discretion and control of the court; and an agreement wanting in mutuality, and by which, without the consent of his client, an attorney has waived his client's substantial legal right, will not be enforced. And in *Faughnan* v. *Elizabeth*, 58 *N. J. L.* 309, the Supreme Court held that a satisfaction of judgment entered by the clerk by virtue of a warrant from the attorney of record of the plaintiff, will be vacated if the attorney was without authority to satisfy the judgment, and the defendant was not misled and other parties are not affected by the vacation. See, also, *Pursell* v. *Bennett* (*Supreme Court*), 68 *Id.* 519, where it was held that in the absence of showing to the contrary only, it will be presumed that an acknowledgment of service was duly authorized.

"And the same doctrine has been enunciated in chancery. In *Dickerson* v. *Hodges*, 43 *N. J. Eq.* 46, Vice-Chancellor Van Fleet held that a solicitor has no authority under his retainer to surrender any substantial right of his client without his client's consent. See, also, *Strauss* v. *Rabe*, 97 *Id.* 208, 213." In the matter of *Koehler's Estate*, 102 *Id.* 133; 140 *Atl. Rep.* 15; *Trenton Street Railway Co.* v. *Lawlor*, 74 *N. J. Eq.* 828; 71 *Atl. Rep.* 234; 6 *C. J.* 649.

We now proceed to a discussion of the next problem involved. Upon the reinstatement of the cause did the court have the power to make the amendment in question? We do not deem it necessary to decide whether the letters that passed between the attorneys constituted a stipulation to substitute the name of the widow for that of her deceased husband. For we are of the opinion that the statutes of this state and the decisions thereunder authorize such amendment, notwithstanding that the period of the statute of limitation had run.,

The sound, just and liberal legislation and rules of court, on the subject of amendments, to the end of permitting the working out of substantial justice, in each case, is a deeply rooted, fixed and closely followed judicial policy of our courts. Thus, this policy finds repeated expression and application in a host of our cases. The following are but a few of the many of such reported cases and are both illustrative and controlling.

In *Giardini* v. *McAdoo*, 93 *N. J. L.* 138; 107 *Atl. Rep.* 437, a widow obtained a judgment under the New Jersey Death act as administratrix for the death of her husband arising out of an accident that occurred in Pennsylvania. This court held that the Death act of Pennsylvania was applicable (*Lower* v. *Segal*, 59 *N. J. L.* 66) and the suit should have been brought by the widow, individually, instead of as administratrix of the deceased. The court, however, permitted an amendment by changing the title of the case and the allegation of the complaint in accordance with the practice in Pennsylvania, and this notwithstanding the fact that the statute of limitation had tolled. Chancellor Walker, for this court (at *p.* 147), said:

"We incline to the opinion that under the provisions of the Practice act of 1903 concerning amendments, as interpreted in City of Hoboken *v.* Gear and other cases, an amendment of these proceedings might be ordered by substituting the name of Adele Giardini, the widow, as plaintiff, and striking out the description of her representative character, and also by striking out the reference to the next of kin left by the deceased; but, whether so or not, the provisions of the Practice act of 1912 are broad enough to permit of its being done. And these statutes, as is known, are to be liberally and beneficially expounded * * *."

And, further (at *p.* 148), said:

"Nor have we overlooked the fact that in *Lower* v. *Segal, supra* (59 *N. J. L.* 66; 36 *Atl. Rep.* 777), the Supreme Court held that an amendment would be unreasonably vexatious to the defendant in that case because it appeared that the action was not brought within the period limited by the laws of Pennsylvania, which .was followed in Rankin *v.* Central Railroad Co., and Fitzhenry *v.* Consolidated Traction Co. In the case at bar the situation is the same to this extent, if an amendment were not allowed and the judgment were reversed without a *venire de novo,* the plaintiff, apparently, would be remediless, because the limitation under the Pennsylvania statute for bringing this sort of action is one year, which has already expired. But it must be conceded that all proper amendments may be made, irrespective of the defenses which they would bar; and the only question here is, whether the fact that the statute of limitation in Pennsylvania would bar this action if it were commenced *de novo* is controlling. Whether or not it was under the law as it stood prior to the Practice act [1912], it cannot be argued with any show of reason that the beneficient provisions for amendment in the latter act are unenforceable in the presence of such a situation. On the contrary, they are entirely applicable, and, in and of themselves, quite dispositive of the question."

True, in the Giardini case the fact that the amendment was ordered after judgment appears to have been taken into

consideration. Yet the decision in the case of *Wilson* v. *Dairymen's League, &c., Inc.*, 105 *N. J. L.* 188; 143 *Atl. Rep.* 454, was based on no such factor. A suit under our Death act was instituted by a widow as general administratrix whereas it should have been by the same person as administratrix *ad prosequendum*. The mistake was not discovered until a change of plaintiff's counsel was made after the statutory limitation had expired. The widow was thereupon appointed administratrix *ad prosequendum* and upon the opening of the trial plaintiff moved to amend and the motion was granted over defendant's objection and exception. On other grounds, a mistrial was declared. The case came up for retrial and plaintiff made the same motion for amendment of the complaint and the motion was granted. The trial judge, however, granted a nonsuit on defendant's application, on the ground that the two-year limitation of the Death act barred the right of action. Plaintiff took exception and appealed to this court. Mr. Justice Katzenbach said (at *p.* 191) : "If there was no error committed in allowing the amendment, there was no sufficient ground to justify the nonsuit." The court, citing *Public Service Electric Co.* v. *Post* (*Circuit Court of Appeals*), 257 *Fed. Rep.* 933 ; *Brice* v. *Atlantic Coast Electric Railway Co.*, 102 *N. J. L.* 288; 132 *Atl. Rep.* 253, and *Giardini* v. *McAdoo, supra,* discussed the broad and liberal policy of our legislation and judicial construction placed on the power of allowing amendments and reversed the judgment of nonsuit and ordered a new trial. The same author of the opinion further said (at *p.* 191) :

"* * * The plaintiff upon the record is merely a formal party for the maintenance of the action. The supplemental act in substituting one person for another as the formal party to prosecute the action did not affect rights theretofore existing but only the manner or method of their enforcement. The effect of these observations is that the administrator *ad prosequendum* institutes an action for death as a matter of form and not one of substance. In our opinion, there was no error in the allowance of the amendment. * * * Such

substitution affected no substantial right of the defendant below. It was the correction of technical mistake."

It may be well to point out that in the case at bar, an amendment will serve but to rectify an obvious technical defect.

Subsequent to the decision just referred to, this same court had before it the case of *Norko* v. *Rau,* 107 *N. J. L.* 479, in which the trial judge had permitted an amendment, after the statute of limitation had run, substituting the father, as an individual, for the father as administrator *ad prosequendum* of his son's estate in a death case arising out of an accident in Pennsylvania. Amendment was also ordered to aver the Pennsylvania Death act which controlled the situation. In that case Mr. Justice Case, speaking of the cases of *Lower* v. *Segal,* 59 *N. J. L.* 66; 60 *Id.* 990; *Rankin* v. *Central Railroad Co.,* 77 *Id.* 175; *Fitzhenry* v. *Consolidated Traction Co.,* 63 *Id.* 142, said (at *pp.* 481, 482) :

"* * * The Rankin and Fitzhenry cases follow the second Lower case and that in turn was influenced by the construction there given to the power of amendment as contained in what was then the one hundred and thirty-eighth section of the Practice act, now section 126 of the 1903 Practice act. 3 *Comp. Stat., p.* 4091. Since those determinations the 1912 Practice act has been passed and section 23 thereof (2 *Cum. Supp. Comp. Stat., p.* 2817), in conjunction with sections 8 and 9, was regarded by this court in *Giardini* v. *McAdoo,* 93 *N. J. L.* 138 (opinion by Chancellor Walker), to be broad enough to permit even an appellate court to amend by adding the widow in her individual capacity, as plaintiff, and striking out her representative capacity as administratrix. True, the right of the record plaintiff to recover in that case had not been questioned until the appeal was taken; but the holding is that the statutory authority for such an amendment exists."

And, further, said (at *p.* 482) :

"The amendment in the case before us was properly allowed, notwithstanding the fact that had the case so turned that the father had found himself out of court he would

have been barred by time against suing anew. The ruling was justified by our statutes on amendments to pleadings and is within the authority of our decisions."

These powers formed the basis for the conclusion reached in the Giardini, Wilson, Norko and other cases and likewise forms the basis, under the particular facts herein, for the conclusions reached in the case at bar.

Although the recent case of *Laute* v. *Gearhart*, 11 *N. J. Mis. R.* 117; 165 *Atl. Rep.* 115; affirmed by this court, on the opinion below (112 *N. J. L.* 382), is not cited in either brief, we desire to make this reference thereto and point out that it is not controlling in the case at bar. In the case cited it was said (at *p.* 119) :

"In discussing the second question [power of amendment] before the court, it must be borne in mind that not only was the infant not sued, but neither was service ever made upon him. No personal service was ever made upon the guardian, but service in both suits was acknowledged for her in the following language: 'True and legal service of the within summons and complaint is hereby acknowledged on behalf of Grace Thurber Gearhart, guardian of David McKibbin, 3d, defendant. Robert Bright, attorney.' This acknowledgment could in nowise be considered as service upon the infant, for in the first place an infant must be personally served like an adult, and that service should be made in the presence of some competent person. *In re Martin*, 86 *N. J. Eq.* 265; 98 *Atl. Rep.* 510. In the second place, an attorney has no authority to acknowledge service for an infant defendant. *Lang* v. *Beloff*, 53 *N. J. Eq.* 298; 31 *Atl. Rep.* 604."

Assuming, but not so deciding, that point 3 (the jurisdiction of the court below was never invoked), is properly before us—we have carefully considered it and find it to be without substance; it merits no further discussion.

The order of the court below is reversed; the cause is ordered re-instated. It will be remitted to the Circuit Court with leave to the plaintiff to apply for, and with direction to that court to grant, appropriate amendments as herein pointed out so that the case may be tried on the merits.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PAR-
KER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN
BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.