30 N.J. Super. 446 (1954)
104 A.2d 870
JAMES DUNLEVY, PLAINTIFF,
v.
THE MARTIN DENNIS COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 30, 1954.
*447 Messrs. Greenstone & Greenstone, attorneys for plaintiff (Mr. Joseph Kraemer, of counsel).
Messrs Cox & Walburg (Mr. John A. Gleeson appearing), attorneys for defendant.
DREWEN, J.C.C. (temporarily assigned).
Plaintiff sues to recover damages for disabling injuries alleged to have resulted from his exposure to poisonous fumes and substances while employed by New Jersey Erectors Corporation, an independent contractor, as a laborer, in work then being done by it at the chemical manufactory in Kearny known as the Martin Dennis plant. The period of the alleged exposure, as appears from the depositions, was from August 14 to September 15, 1950. The defendant named in the action is the Martin Dennis Company, a corporation of this State. The answer admits that defendant is a New Jersey corporation, but all other allegations of the complaint are denied. Plaintiff now moves to amend the process and pleadings herein by amending the name of the defendant to read "Diamond Alkali Co., doing business as the Martin Dennis Company," the underlying contention being that the defendant corporation provided only the name and semblance of ownership for the Kearny plant, the same being then actually owned and operated by the Diamond Alkali Company. It is from depositions taken and filed by the plaintiff that the facts to be recited are drawn. In the problem presented two corporations of this State will be dealt with, each bearing the corporate style of the defendant above-named, i.e., the Martin Dennis Company, and the second of which is the defendant in this suit. The manner and sequence of their creation will be shown.
Of first importance in these considerations is the fact that for upwards of 35 years immediately preceding its dissolution on December 28, 1949, the first or earlier the Martin Dennis Company had owned and operated a chemical plant in Newark, or in Kearny (the plant here in suit), or at both locations at once, where it had engaged in the manufacture *448 and processing of chemical substances commonly known as chrome and chrome products. During the period stated the name of the said the Martin Dennis Company had become, in the judgment and appraisal of the Diamond Alkali Company, which succeeded to its control, a symbol or standard of commercial good will in the marketing of the products mentioned, sufficiently evident to induce Diamond Alkali to continue the exploitation of the Martin Dennis name after the dissolution, in the manner and by the means hereinafter described.
In March of 1948 all outstanding stock of the first the Martin Dennis Company had been acquired by the Diamond Alkali Company, a Delaware corporation, the business of the two companies being identical in all respects. On December 28, 1949, following its acquisition of the stock, the Delaware company, acting through its agents and representatives, caused the New Jersey company to be dissolved. Simultaneously with the dissolution, however, a certificate was filed for the incorporation in this State of a new or second the Martin Dennis Company, whose corporate purposes as declared in the certificate are identical with those of the first the Martin Dennis Company, and, as it would appear, identical also with those of the Diamond Alkali Company. The latter company has from the beginning owned all the stock of the second the Martin Dennis Company, the present defendant, and the same persons are the officers and directors of both companies. On August 17, 1950 the Martin Dennis Company (in dissolution) made and executed to the Diamond Alkali Company, by the surviving directors as trustees in dissolution, a deed of conveyance, effective as of December 31, 1949, purporting to vest in the Alkali Company title in fee simple to lands, tenements and appurtenances which include those constituting the Kearny plant whereat the alleged injury occurred. The afore-mentioned trustees in dissolution are likewise the officers and directors of the Delaware corporation.
Now, what is the relation between the present the Martin Dennis Company, defendant herein, and Diamond Alkali *449 Company? To begin with, in addition to the identity of their officers and directors, their statutory agent is the same, the Corporation Trust Company in Jersey City, the Martin Dennis Company has no other office save that designated by the address 300 Union Commerce Building, Cleveland, Ohio, which is also the office of Diamond Alkali Company. Summons and complaint in the case before us were served on the Corporation Trust Company, as statutory agent, and thence transmitted and received by the deposing witness Carmichael, secretary of the defendant company and of the Diamond Alkali Company, at the Cleveland office of these companies. It is further established by the proofs that the existing the Martin Dennis Company has no bank account, and has engaged in no business since its incorporation. It shadows forth as a corporate simulacrum. The deposing witness Evans, president of both companies, testifies that "it (Martin Dennis) is inactive, dormant and has never done any business." Nevertheless, the proofs show that as between it and the Alkali Company there has been and still is a corporate fusing and cofunctioning, under the merged dominance and control of Diamond Alkali, that is essential to the rationale of this decision. What purpose in the business affairs of Diamond Alkali Company does the subjugated New Jersey corporation serve? The answer is provided in the depositions of the aforementioned Evans and Carmichael.
The following is from the testimony of Evans, the dual president:
"Q. What were the reasons (for incorporating the second The Martin Dennis Company)? A. The reasons were to protect the Martin Dennis name and to prevent anybody else from capitalizing on the use of that name * * *. If the name had been used by others we felt it might result in our losing some business.
Q. When you say `we felt' whom do you mean? A. Diamond Alkali Company.
Q. Now when did the Diamond Alkali Company take actual physical possession of the plant in Kearney that was formerly owned by The Martin Dennis Company? A. In the very early part of 1950.
Q. Was the plant in operation at that time? A. I believe it was." *450 And there is the following by the same witness:
"Q. Now, the Martin Dennis Company, Division of the Diamond Alkali Company, is that the name that is used by the Diamond Alkali Company for the Kearny plant? A. Yes, sir. * * *.
Q. Mr. Evans, the use of the term Martin Dennis Company, Division of Diamond Alkali Company, was that used in connection with the business or was that used merely within the company as a means of identifying that particular plant and distinguishing it from any other plant? A. Well, I would say both. * * * We were trying to identify The Martin Dennis name with Diamond Alkali Company to tie it in with our national advertising.
Q. All right. A. Make the employees feel that they were part of the parent company. * * * Diamond Alkali Company.
Q. That's been the fact since the Diamond Alkali Company took the plant over? A. Yes."
Mr. Carmichael, the dual secretary, deposes:
"Q. Was it (the second Martin Dennis Company) incorporated for the purposes set forth in the incorporation? A. No, that isn't correct.
Q. What is the correct statement? A. The certificate of incorporation gives the corporation the power to conduct the business as set forth therein. The purpose in organizing the corporation was to protect the name of The Martin Dennis Company which had value to its owners in the tanning trade.
Q. Who were the owners of the name of The Martin Dennis Company? * * * A. The Diamond Alkali Company."
The following is also from the depositions of the witness Carmichael:
"Q. Now, you spoke of the present The Martin Dennis Company having an office at 300 Union Commerce Building, Cleveland, Ohio. Does it have separate physical office or is it just identified with the offices of the Diamond Alkali Company? * * *. The witness: It does not have separate offices.
Q. And the office of Mr. Evans, as president of the Diamond Alkali Company, is the same office that he occupies as president of The Martin Dennis Company? A. Yes. * * *.
Q. The office that you occupy as secretary of the Diamond Alkali Company is the same office that you occupy as secretary of The Martin Dennis Company, isn't that correct? A. Yes. * * *."
In keeping with the designation of the former Martin Dennis plants as "The Martin Dennis Company, Division of the Diamond Alkali Company" there are the following listings *451 in the telephone directories both for the Newark and the Kearny plants,

 1949-50 Martin Dennis Co., 859 Summer Ave. Newark
 Superintendent's office, Belleville Turnpike
 Kearny 2-6150
 1951-1952 Martin Dennis Co., 859 Summer Ave. Newark
 Superintendent's office, Belleville Turnpike
 Kearny 2-6150
 1953-1954 Martin Dennis Co., Div. of Diamond Alkali Co.
 Belleville Turnpike, Kearny 2-8200

The proofs leave no doubt that from a time beginning, at the latest, with the dissolution of the first the Martin Dennis Company in December 1949, the sole owner and operator of the Kearny plant was the Diamond Alkali Company; and that its operation was carried on under the double semblance reflected by the names of the two companies, designedly so in execution of Diamond Alkali's dominating policy as the same is outlined with clarity in the depositions. It would have been in perfect keeping with the executed business policy of the master corporation had the public totally  and which we are at liberty to assume was actually the case  been brought to recognize the Kearny plant by its identification with the Martin Dennis name, so that it can be the subject of neither complaint nor surprise on the defendant's part that the plaintiff in this action knew it as the Martin Dennis plant, and that it was to the Martin Dennis Plant that he had been sent from the hall of his union to enter upon the employment during which his injury is claimed to have been caused. The deceptive potentialities in the situation are unmistakable. And since the potentialities were there, as Diamond Alkali created them, indiscriminately and without measure, it is not incumbent upon this court to search out and determine for the present decision whether in the particular instance of this plaintiff the deception did or did not have its intended effect. Evidently in the present case it most certainly did have. There was never a time within the period that concerns us when inquiry made at the appropriate office of the government would not have elicited the information that *452 the Martin Dennis Company was a corporation of this State engaged in precisely the kind of business then being carried on at the Kearny plant, the same as an identically named corporation had been continuously engaged in for more than a generation before.
The depositions also place certain other things beyond question. The scheme of creating the later Martin Dennis Company to coincide with the dissolution of the former Martin Dennis Company, and of doing so for the purpose described by Messrs. Evans and Carmichael, required that the objects set forth in the certificate of reincorporation should amount to no more than formal pretense. And having the same purpose in mind for the use of the Martin Dennis name in the plant designation, it can only be concluded that such use of the name was as much a pretense as the corporation itself. Had the second Martin Dennis Company not been created to serve this single and ulterior end, likely as not the present dilemma would not have ensued. All that the use of the Martin Dennis name can in truth be said to have accomplished is concealment of the sole ownership and authority of the Alkali Company as plant operator. What defendant seeks in this controversy  really it is what Diamond Alkali seeks through the instrumentality of this defendant's contest of the motion  is the advantage of the statutory bar to Diamond Alkali's being named as defendant. If that advantage were to be allowed to Diamond Alkali, it could only be for its dissembled continuity of a corporation, which in every real sense no longer existed. And the precedent could pattern a very harmful kind of corporate manipulation.
Defendant resists the motion by arguing uncompromisingly for the stark technicalities of the corporate artifice. There are circumstances, of course, as the precedents indicate, in which such technicalities are legally sufficient, but certainly, I think, not here. The theory of defendant's contention requires it completely to overlook so much that is vital to the question that the argument presented becomes no more than a tissue of special pleading. For example, it is stressed that plaintiff's motion seeks at this time to amend the process *453 so as to name therein as defendant a corporation "which has never been named as defendant and has never been served with process in this suit." These and similar affirmations that run through defendant's brief, while they may have a kind of hard, narrow, oppressive accuracy, in a situation like this they lend no weight whatever to the argument, since they rest upon nothing better than the efficacious result of a contrived and misleading inducement to the public in the matter of authority and ownership at the Kearny plant. To emphasize the legalistic separateness of the two corporations for the purpose of defeating this motion is to emphasize the mischief. Indeed, the question arises how the true interrelation between the two companies named in the plant designation could possibly be ascertained by any one short of a procedural inquest like that which has been accomplished by the very depositions taken in this case, and for which only the pendency of an action against one or the other of the companies could provide the occasion.
No case in plaintiff's brief deals with a strictly comparable situation. There appears to be no strictly comparable precedent. Uniformly lacking is that element which is so essential and conspicuous here, an ambiguous identity designedly created by the party to be brought in, that is the party in actual control of operations at the time of the injury alleged. The decisions generally fall into categories that relate: (a) to a change in defendant by substituting a trustee or receiver or to the making of an amendment of similar character; and (b) to a change not in the defendant but in the capacity or character of plaintiff, as, for example, substituting plaintiff in a representative capacity for plaintiff as a suitor pro se. Lehigh Coal & Navigation Co. v. Central R.R. of N.J., 42 N.J. Eq. 591 (Ch. 1887); Giardini v. McAdoo, 93 N.J.L. 138 (E. & A. 1919); Wilson v. Dairymen's, etc., Inc., 105 N.J.L. 188 (E. & A. 1928); Scott v. Hoboken Bank for Savings, 126 N.J.L. 294 (Sup. Ct. 1941); Laute v. Gearhart, 11 N.J. Misc. 117 (Sup. Ct. 1933); Martin v. Lehigh Valley R.R. Co., 114 N.J.L. 243 (E. & A. 1934).
*454 Defendant's authorities have no closer relevancy than do those of plaintiff, and for the same reason. In Coventry v. Barrington, 117 N.J.L. 217 (E. & A. 1936), the defendant was designated in the process and pleadings in a form purporting to be a corporate title, the same being entirely fictitious. The true and intended defendant was a partnership. The statute had lapsed. The true defendants had been entirely passive, having done nothing whatever to influence the plaintiff's error. No act or suggestion was claimed to have induced plaintiff's failure to recognize them as true defendants. The same unqualified passivity applies in Laute v. Gearhart, supra, wherein the plaintiff sought to bring in the infant as defender rather than the guardian who had at first been sued. But there would be no point in multiplying citations that can be of no help.
Defendant stresses in support of its position the opinion of the Hudson County Court in Markey v. Robert Hall Clothes of Paterson, Inc., 27 N.J. Super. 417 (1953). There the plaintiff sued for injury claimed to have been sustained in the store of a corporation known as Robert Hall Clothes of Clifton, Inc., but brought the suit against Robert Hall Clothes of Paterson, Inc. Motion was made after lapse of the statute to amend the process so as to have it accord with the necessities of the situation. The motion was denied. It was made to appear that a number of corporations engaged in the sale of clothing at retail were similarly styled but distinguished in their corporate titles by the addition of the city in which the particular store of the corporation was located. Defendant in its brief alludes to the feature in the Markey case of interlocking directorates and of a single statutory agent, all of which I find to have no bearing on the present question. In the Markey case the simple fact remained that the Clifton and Paterson stores were owned and operated each by a separate corporate entity. Corporate individuality was controlling in the case and nothing had been done by either corporation to overcome, modify or confuse the recognizable separateness of the companies and their respective stores. In that case there was nothing like the subjugation *455 of one of the corporations by the other to the latter's own use. There was clear differentiation; and the locations of the stores were distinctly separate. Also in the Markey case both of the corporations had been entirely passive in the situation presented. No equitable principle was involved. Nor does the determination of the instant case depend on its identity of directorial and official personnel. That feature here is merely a circumstance in the proof of the facility and means by which Diamond Alkali made the use it did of the Martin Dennis Company and its name for exploitive purposes.
The overarching and controlling principle here is, in my judgment, that of estoppel in pais. See Peters v. Public Service Corp. of N.J., 132 N.J. Eq. 500, at p. 507 (Ch. 1942).
A situation similar in principle to this one is found in Ross v. Pennsylvania R.R. Co., 106 N.J.L. 536 (E. & A. 1929). There the court said (at p. 539):
"Where a corporation holds stock of another, not for the purpose of participating in the affairs of the other corporation, in the normal and usual manner, but for the purpose of control, so that the subsidiary company may be used as a mere agency or instrumentality for the stock holding company, such company will be liable for injuries due to the negligence of the subsidiary."
Plaintiff's work at the plant began, as stated, August 14, 1950 and ended September 15, 1950. According to the witness Evans, Diamond Alkali took actual possession of the plant "the very early part of 1950." It is plaintiff's contention that throughout the period of his work there the actual operator of the Kearny plant and the party truly answerable to him in this cause is the Diamond Alkali Company; that this motion seeks to add no new defendant nor in anywise to change the cause of action, only to designate the defendant by what, for all practical purposes, the real defendant has sought, in the enhancement of its business, to establish as a tradename. It is my judgment that the contention is sound and that the motion must be granted. That will be the order.