## HAYDEN v. VREELAND.

1. An action for breach of promise of marriage could not at common law be maintained by or against the personal representative of either party to the contract.

2. This is an action *ex contractu*, and not in tort, and, therefore, not within the act of March 17th, 1855. (*Nix. Dig., p.* 4.)

3. Not being an action which may originally be prosecuted against the personal representative, it abated by the death of the defendant after issue joined.

Argued at November Term, 1874, before Justices VAN SYCKEL and WOODHULL.

For the plaintiff, *Ransom* and *Milnor.*

For the defendant, *Flemming* and *Winfield.*

Hayden v. Vreeland.

The opinion of the court was delivered by

VAN SYCKEL, J. The plaintiff instituted her suit in this court against Vreeland, the defendant, for breach of promise of marriage. The defendant died after issue joined, and the question now is whether the suit abates.

Originally, at common law, all actions abated by the death of a sole plaintiff or defendant, and if the cause of action survived a new suit was necessary. Under the 3d section of our act respecting abatement, all actions which might originally be prosecuted against executors or administrators, may be revived.

The first question to be considered is, whether, under the common law maxim, *actio personalis moritur cum persona*, a suit for breach of promise of marriage could be maintained against the personal representative of the promisor after his death. The term personal action, in its largest sense, includes all actions except those for the recovery of real estate, and would embrace actions of debt, and *assumpsit* for the money counts, which were never supposed to die with the person. A more restricted meaning must therefore be given to this maxim. An executor could not be sued where the cause of action was founded upon any malfeasance or misfeasance of his testator, or where it arose *ex delicto*, where the declaration imputed a tort done to the property or person of the plaintiff, and the plea must have been not guilty. To this rule excluding torts, there were exceptions.

If the plaintiff's goods were taken by the testator, and continued in specie in the hands of the executor, replevin or detinue would lie, or if they had been converted by the testator, an action for money had and received, to recover the value. *Hambly* v. *Trott, Cowper* 372; *Wheatly* v. *Lane*, 1 *Saund.* 216, and notes; 2 *Arch. Pr.* 298; *Pinchon's Case*, 9 *Coke* 86 *b*.

In Hambly *v.* Trott, Buller, who was of counsel, argued that the rule was limited to those instances where the action is founded merely on an injury to the person, and no property was in question, and to cases where the damages are vindictive

and entirely uncertain. In that case Lord Mansfield remarked upon the fundamental distinction, that, "if it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer, the person injured has only a reparation for the delictum in damages to be assessed by a jury, but where, besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. As, for instance, the executor shall not be chargeable for the injury done by his testator in cutting down another man's trees, but for the benefit arising to his testator for the value, or sale of the trees, he shall. So far as the tort itself goes, the executor shall not be liable; but so far as the act of the offender is beneficial, the executor is answerable."

The action was trover against the executor for conversion of goods by the testator; plea—testator not guilty, and verdict for the plaintiff. On motion in arrest of judgment, Lord Mansfield held that the issue being to try the guilt of the testator, the judgment must be arrested, but that an action for money had and received could be maintained, although it was expressly observed that it did not appear that the goods came to the executor in value. The same view was taken by Lord Kenyon, in *Utterson* v. *Vernon*, 3 *T. R.* 539, and in *Cooper* v. *Crane*, 4 *Halst.* 173, Chief Justice Ewing cites the declarations of Lord Mansfield with entire approbation.

The distinction seems to be between causes of action which affect only the person, and those which affect the estate, where the representative of the defendant acquires some property or value, by reason of the act complained of. Mr. Justice Blackstone, in the third volume of his Commentaries, page 302, gives the reason for the rule. He says, "that in actions merely personal, arising *ex delicto*, the rule is '*actio personalis moritur cum persona*,' and it shall never be revived, either by or against executors, for neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury. But in actions *ex contractu*, where the right descends to the

representative of the plaintiff, and those of the defendant have assets to answer the demand, though the suits shall abate by the death of the parties, yet they may be revived by or against executors, being indeed rather actions against the property than the person, in which the executors now have the same interest that their testator had before."

The application of the common law rule is not inflexibly controlled by the fact, that the cause of action arose out of a tort or a contract.

There can be no doubt that, at common law, property obtained by the trespass of a testator, could be followed and recovered from the executor, or if the testator had converted it, the proceeds could have been recovered from his representative; but I believe that no case can be found in the books conceding a right of action to or against the personal representative, where the cause of action affected only the person, unaccompanied by any allegation of resulting injury to the estate. The latter case would be clearly within the reason given, for the application of the rule, by Justice Blackstone, for in such cases the executor neither receives nor commits any wrong in his own person, nor is the property of the testator, in which he is interested, in any way affected by the act upon which the suit is founded. It was held in *Knights* v. *Quarles*, very fully reported in 4 *Moore* 532, and in *Wilson* v. *Tucker*, 1 *Dowling & Ryland*, N. P. C. 30, that an executor may sustain an action to recover damage for negligence of an attorney, in investigating a title about to be conveyed to the deceased, but the court expressly adverted to the fact that it was alleged in the declaration that it was an injury to his personal estate during his life. Where the damage was purely to the person, as in injuries affecting the life or health of decedent, arising out of the unskilfulness of medical practitioners, or imprisonment of the party, resulting from the negligence of his attorney, Lord Ellenborough, in the case hereafter cited, declared that the executor could not recover.

The first case in which the question now under discussion was distinctly adjudged is, *Chamberlain* v. *Williamson*, 2 *M.*

& S. 408, which was a suit for breach of promise to marry, instituted by the administrator of the promisee.

Lord Ellenborough held that the action could not be maintained, recognizing the distinction I have stated. His judgment has been so far acquiesced in that, since his day, no English case has controverted it. In this country, courts entitled to the highest respect have acknowledged its authority.

In *Stebbins* v. *Palmer*, 1 *Pick.* 71, where the action was against the administrator of the promisor, the Supreme Court of Massachusetts adopted the doctrine of Chamberlain *v.* Williamson, and refused to entertain the suit, although their attention was called to the fact that, in the English case, the suit was brought against the promisor himself. The correctness of this conclusion was approved by so great a jurist as Chief Justice Shaw, in the precisely similar case of *Smith* v. *Sherman*, reported in 4 *Cush.* 408.

In *Lattimore* v. *Simmons*, 13 *S. & R.* 183, Chief Justice Tilghman, in a carefully considered opinion, ruled that an action for breach of promise of marriage does not survive against executors. In that case, Chamberlain *v.* Williamson was not referred to, and seems to have escaped the attention of the court, but the learned Chief Justice remarked that *Stebbins* v. *Palmer*, 1 *Pick.* 71, was the only case in this country in which this point had been distinctly adjudicated.

*Ex parte Charles*, 14 *East.* 197, where it was decided that a woman to whom a promise of marriage had been made, could not, on that account, be a petitioning creditor, or sue out a commission of bankruptcy, is an analogous case.

The fact, therefore, that in *Perry* v. *Orr*, 6 *Vroom* 295, this court held that the action for breach of promise of marriage is in form an action *ex contractu*, and subject to the rules of legal procedure which govern that class of cases, cannot affect the determination of this question. Had the plaintiff in this case died, her executor could not be charged with a *devastavit* for failing to prosecute this action, nor if she had become insolvent, would this right of action have passed by her assignment under our insolvent laws.

While marriage, in our law, is defined to be a civil contract, it is *sui generis*, and a consideration of its peculiar characteristics may furnish some reason why, although for some purposes of legal procedure, it is classified with contracts, as distinguished from torts, it is not, in all respects, to be governed by the same rules. Marriage is an institution, or relation, regulated and controlled by government, upon principles of public policy, for the benefit of the community.

It requires the contract of competent parties to enter into it, and something beyond that to consummate it. When the contract is executed, it cannot be dissolved or released, with or without consideration, by the parties themselves.

Judge Story quotes with approbation the remarks that, " marriage, being entirely a personal consensual contract, it may be thought that the *lex loci* must be resorted to in expounding every question that arises relative to it. But, it will be observed, that marriage is a contract *sui generis*, and differing, in some respects, from all other contracts ; so that the rules of law, which are applicable in expounding and enforcing other contracts, may not apply to this." *Story's Conflict of Laws*, § 109.

Neither the rights created by this relation, nor the obligations flowing from it, can be assigned or transferred, and the action for the breach of the contract differs widely, in some respects, from other actions *ex contractu*.

The damages are not limited by any fixed rule, but as in strictly personal actions, like slander and assault and battery, are in the discretion of the jury, being principally for wounded pride and injury to the feelings.

The character and conduct of the plaintiff may be shown in mitigation of the damages, and the motives of the defendant, his pecuniary ability, and other extrinsic circumstances may mitigate or enhance the amount to be recovered.

The peculiarities adverted to, the exceptional nature of the contract, the injury being purely personal, in no respect affecting the estate, and the damages being punitive, bring this cause of action clearly within the reason and spirit of the

maxim, *actio personalis*, and will account for the fact that in England no suit has been successfully prosecuted by or against the personal representative for this injury under the common law rule. In my judgment this action, in the absence of statutory aid, would not lie originally against the executor or administrator. Whether the action could be maintained if it had been alleged, that by the breach of the contract, special damage had resulted to the property of the plaintiff, it is not necessary to determine. Such a case would undoubtedly be beset by many difficulties as to the rule for damages, which would be applicable to its trial; whether the action must be considered indivisible and an entirety, or if the personal elements could be eliminated, and the damages restricted to the property loss, whether it would be competent to show that the plaintiff had an opportunity subsequently to contract an alliance equally eligible.

This action, therefore, must fail, unless by virtue of the act of March 17th, 1855, (*Nix. Dig.*, *p.* 4,) it is classified with those cases which may be originally maintained against the executor, and so brought within the operation of the third section of the act concerning abatement of suits.

The act of 1855 provides " that where any testator or intestate shall in his or her lifetime have committed any trespass to the person or property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors or administrators of such testator or intestate, as he, she or they might have had or maintained against such testator or intestate, and shall have the like remedy and process for the damages recovered in such action as are now had and allowed in other actions against executors or administrators."

In this, as in the statute 4 *Edw. III*, *ch.* 7, " trespass " is the only word used. In *Ten Eyck* v. *Runk*, 2 *Vroom* 428, the Chief Justice, following the liberal interpretation which had been given to the English statute, held that this word must be received as equivalent in meaning with the word " tort."

Under this most equitable construction, the present case must be excluded from the benefit of this enactment, unless it can be classed with torts.

I can conceive of no rule of statutory construction under which it would be admissible to give the word "trespass" a meaning so comprehensive as to embrace an action for breach of a contract to marry, without doing violence to the case of Perry v. Orr.

This action does not survive at common law, not because it is not an action *ex contractu*, as distinguished from tort, but for the reason that the injury is purely personal, in which the representative of the estate has no interest. It is not a tort in the legal acceptation of the term; refusal to consummate the engagement is a wrong in the same sense that it is a wrong to fail in the performance of any other agreement. It is not a *quasi* tort, but purely a case of contract broken, and disregarded, and upon this recovery in the action must be based. Its peculiarity lies in the fact that the injury to be compensated is exceptionally personal, and hence, in a measure, the same rule of damages is applicable to an action to redress it that governs in other injuries of a strictly personal character. It cannot be saved by force of our statute of 1855, because it has been declared by our Supreme Court to be an action of contract, and therefore cannot be included by the most liberal interpretation of the word "trespass."

In strict harmony with the view now adopted, the act of 1855 may be applied to that large class of cases in which defendants, acting under an implied contract to exercise skill and care, are guilty of negligence resulting in injury to the person only. In these cases there is a breach of an implied contract, but negligence is the gist of the action, and the declaration is framed in tort, to which the plea will be not guilty, so that there may be a recovery without an allegation of special damage to the estate. While courts will break through mere form and construe remedial statutes beneficially to promote the ends of justice, it is better not to strain established rules of construction, but to leave the law making

power to preserve to the personal representative, by further legislation, the action for breach of promise of marriage, if it shall be deemed wise so to favor it.

Being of opinion that the term "trespass" cannot be held to include this cause of action, it must abate.

Justice WOODHULL concurred.