Thompson v. Johnson.

---

## LEWIS B. THOMPSON v. ISAAC I. JOHNSON.

1. The fifth section of the act relating to obligations, authorizing a suit against the representatives of a deceased joint obligor, applies to simple contracts as well as to specialties.
2. A suit will lie against the administrator of a deceased maker of a promissory note, made jointly by two, during the life of the other maker.

Lewis B. Thompson, payee, brought suit against the administrator of the estate of Ephraim P. Snook, who was a co-promisor on a joint promissory note signed by the said

Ephraim P. Snook and one A. F. Cleaver; said note was dated Doylestown, Pa., May 31st, 1872, for $1000, and payable ten months after date. Said note became due and was unpaid in the lifetime of the said Ephraim P. Snook, he, the said Snook, having died August 1st, 1876.

Credits to the amount of $643.12 were obtained from A. F. Cleaver, who is still living, and this suit is brought to obtain the balance due.

The question whether this suit would lie, was submitted by the Circuit Court of the county of Mercer to this court for its advisory opinion.

Argued at February Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *Edward W. Evans.*

For the defendant, *W. D. Holt.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit against the administrator of a deceased maker of a joint promissory note, the other maker of such note being still living; and as, in such a condition of affairs, the action at common law could be brought only against the survivor, the single question which is presented is with respect to the effect of the statute of this state relating to obligations. It is said that the fifth section of the act sanctions this suit. The words of this section are these : " The representatives of one jointly bound with another for the payment of a debt, or for the performance or forbearance of any act, or for any other thing, and dying in the lifetime of the latter, may be charged, by virtue of such obligation, in the same manner as such representatives might have been charged, if the obligors had been bound severally as well as jointly."

The effect of this provision is to give the force of a several obligation to all obligations to which it applies, and which,

according to their terms, are joint only. That this is its province is not disputed; but on the side of the defendant, it is alleged that it does not embrace among its objects simple contracts, but exclusively contracts under seal. And this view derives a certain countenance from some of the expressions in the opinion of Chief Justice Hornblower, in the case of *Wade* v. *Potter*, 2 *Green* 278; but the question was not so necessarily involved in that case as to give to the decision of it the weight of a well considered judgment; and besides, the views thus indicated have been rendered still more questionable by the dissent from them expressed by Mr. Justice Elmer, in *Parker* v. *Thompson*, reported in 1 *Vroom* 311. It is true that on this latter occasion the point was not decided, as the exigency did not require such action; but, nevertheless, the intimation of opinion from a judge of such great experience and sound learning, with his mind turned to the subject by the judicial expressions antecedently made of the opposite construction, is a consideration of no little importance. However, the views thus intimated being in conflict, and the question being undecided, the statute itself must be looked to as its own expositor.

The clause in question seems to have been drawn by Judge Paterson. It is found, in its present form, in his edition of the laws as supervised by him, and is, apparently, an original provision, being copied after no English prototype. But it cannot be denied that the phraseology is far from being happy, for while, in the bulk of the clause, an intention seems to be indicated to extend its scope so as to take in all contracts, whether by specialty or by simple contract, there is some degree of uncertainty with respect to this, introduced by the word "obligors" in the subsequent part of the sentence. This term, according to its more technical sense, signifies the maker of a bond, or writing obligatory; consequently, the expression that the representatives of the party dying may be charged, by suit, in the same manner as they might have been charged "if the obligors had been bound severally as well as jointly," has, undoubtedly, limiting the word by its artificial meaning, the

effect of confining the clause to the class of obligations known, in law, as specialties, and would exclude such as emanate from unsealed contracts. But a closer examination of the phraseology will show that this term " obligors " cannot, in this text, be accepted in this restricted signification, and for the cogent reason that it will not, bearing such a sense, give effect to the admitted purpose of the provision which no one pretends had, for any part of its plan, to put out from its operation any obligation arising out of an instrument under seal. The language is too clear in this respect for a doubt to exist with respect to it, for it expressly comprehends persons jointly bound with another, not only for the payment of a debt, but likewise " for the performance or forbearance of any act." Therefore, two or more persons who enter into a joint bond, and two or more persons who enter· jointly into a specialty for the building of a house, are equally affected by this provision ; and yet it is obvious that, with regard to the latter class of contractors, the term " obligors," in its technical meaning, is as inappropriate as it is to the class of persons who bind themselves by simple contracts, for persons agreeing, under seal, to build a house are not, according to strict legal terminology, " obligors," but covenantors. It becomes, therefore, quite evident that the term in question is not to be taken in its narrow and artificial sense, but in its more general signification, by which it designates persons obligated, in whatever manner it may be, to the doing or forbearing of an act. This construction, of course, leads to the result that the clause takes in the class of cases to which the present one belongs.

This result, I think, will also best harmonize with the propriety of the statutory rule under review. No reason appears why, if two persons enter into a joint agreement, authenticated by a seal, that it should be declared that such agreement shall be treated as several, to the end that a suit shall · lie against the representatives of every such persons having died during the life of the other, and that such action shall not lie in case the same contract shall be made to the same effect and in the same form, with the exception of the omission of a seal.

There is nothing in the solemnity of sealing that should give rise to such a legislative discrimination; and, hence, as a question of intent, there is no presumption inherent in this subject that would lend any added force to such terms that may be thought to ambiguously indicate such an end.    Indeed, I think the opposite intendment is the rational one, and this puts a rational purpose in unison with the superior force of the phraseology.