**Dora LANGSAM and Harry Langsam**

v.

**Jay MINITZ.**

**Civ. A. No. 71-2249.**

United States District Court,
E. D. Pennsylvania.

Aug. 18, 1972.

Marvin W. Factor, Philadelphia, Pa., for plaintiffs.

Thomas H. Goldsmith, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BECHTLE, District Judge.

In this case the Court is presented by defendant's motion to dismiss with the very difficult question of whether or not the case should be dismissed because plaintiffs' claim is, to a legal certainty, below the requisite Ten Thousand Dollar ($10,000.00) jurisdictional minimum of this Court. After reviewing the briefs of counsel, the present record, and the evidence offered by counsel at a special hearing on the motion, the Court concludes that the claim of neither plaintiff meets the requisite jurisdictional amount and, therefore, their claims should be dismissed on that ground. The relevant supporting facts and the reasoning of the Court are as follows:

Plaintiffs are husband and wife, and reside in Philadelphia, Pennsylvania. Defendant is an individual who resides in Alliance, Ohio. Plaintiffs' claim is a personal injury claim that arises out of injuries received by plaintiff-wife on July 28, 1970. She was walking on the sidewalk in Atlantic City, New Jersey, and was struck by defendant's automobile while he was backing out of a motel parking lot. Plaintiff-husband makes claim for the necessary costs and expenses incurred by his injured wife and loss of consortium.

Plaintiff-wife was seen immediately after the accident by Dr. Frank Burstein, who diagnosed her condition as hemotoma and contusion sprain of the left thigh and hip, and post-traumatic anxiety reaction. X-rays were taken and no fracture or dislocations appeared. Therapy, in the form of heat treatments, and medicine were prescribed. She continued seeing Dr. Burstein on a regular basis for therapy until November 20, 1970. Until this point, she incurred special damages to the extent of the medical bills of Three Hundred Twenty-Six Dollars ($326.00). This amount was paid by plaintiff, Harry Langsam, and such constitutes part of his claim. Also, the plaintiff, Dora Langsam, missed one month work at her job as a part-time helper in a bakery. This loss of earnings amounted to One Hundred Eight Dollars ($108.00).

On June 29, 1971, the defendant had his doctor, Dr. Lieberman, examine Mrs. Langsam in the office of plaintiffs' counsel. As a result of that examination, Dr. Lieberman made the following findings and conclusions:

1. General appearance was normal. No swelling, deformity, or discoloration was found.

2. No tenderness was found.

3. All movements of the hip were normal, in range, and painless.

4. No muscle weakness or sensory changes were found.

5. No limp was seen.

6. Bending was normal and painless in all directions.

7. There was no segmental splinting.

8. Stress on the lumbo-sacral and sacro-iliac joints caused no pain.

CONCLUSIONS AND SUMMARY:

1. This woman claimed to have been hit on the left hip and knocked down by a car. X-rays of her hip and femur taken that day were essentially normal. There were some incidental findings on x-ray, but I do not believe that these were related to or caused by this accident. She said that she was treated with heat and medication for about four months. This seems long for a bruise, though she still complains of pain here which comes and goes. Examination of the hip and lower back revealed completely normal findings. I feel that she may have had a bruise here, but that she has recovered.

2. I do feel that four weeks of total disability is long for such an injury.

On September 16, 1971, plaintiffs filed their complaint in this action in the United States District Court for the Eastern District of Pennsylvania, basing jurisdiction on diversity of citizenship, wherein the amount in controversy, exclusive of interest and costs, was claimed to exceed the sum of Ten Thousand Dollars ($10,000.00). On November 4, 1971, defendant filed his answer and interrogatories, which were answered by the plaintiff. Thereafter, defendant filed the instant Motion to Dismiss the complaint raising the question as to the sufficiency of the plaintiffs' claim in respect to the Ten Thousand Dollar ($10,000.00) jurisdictional limit. Thereafter, the Court, on June 8, 1972, filed a Preliminary Order setting a special hearing to be held on June 28, 1972, wherein the plaintiffs were directed to show the evidentiary basis of their claim based upon diversity of citizenship.[1] At the request of the attorney for the plaintiffs, the date for the hearing was reset and later held on Friday, July 21, 1972.[2]

As a result of the Court's Order, and in anticipation of the impending evidentiary hearing, plaintiffs' counsel suggested to Mrs. Langsam that she be reexamined and at his suggestion, she made an appointment at the office of Dr. Herbert Stein. She appeared there on July 7, 1972, and was examined by Dr. Stein's associate, Dr. Barry Lipson. After taking her history and examining her, Dr. Lipson diagnosed her condition as trochanteric bursitis.[3] He administered an injection, prescribed medication, and ordered x-rays of the hip to be taken prior to the plaintiff's next visit, which was set for July 19, 1972. At the July 19th appointment, Mrs. Langsam was seen by Dr. Herbert Stein. At that time, he noted that the x-rays taken revealed no evidence of old or recent fracture or

---

1. That Order stated in part:
   "2. At that time, plaintiff will be required to show, in detail, the evidentiary basis of his claim of diversity jurisdiction. See Nelson v. Keefer, 451 F.2d 289 (3rd Cir. 1971).
   "3. Due to the possibility of a ruling adverse to the plaintiff on this Motion, counsel for the plaintiff is urged to give immediate consideration to file a claim in the appropriate state court as will best protect the interests of his clients."
   Counsel for the plaintiff advised the Court at the hearing that proceedings had been begun in the state court within the period of the Statute of Limitations.

2. That Order stated in part:
   "2. Prior to the hearing, plaintiffs' counsel requested the Court to continue the hearing on the ground that plaintiff, Dora Langsam, had not been recently examined by a physician and that the results of such examination were necessary for the plaintiffs to meet their evidentiary obligations at the above hearing."

3. Bursitis is defined as an inflammation of the bursa. W. Saunders, Dorland's Medical Dictionary, page 231 (24th Ed., 1965) (hereinafter Dorland's). Bursa is defined in the same publication as a sac or sac-like cavity filled with viscid fluid and situated in places at which friction would otherwise develop. Dorland's at 228. The trochanteric bursa is located in the area of the femur (thigh bone). Dorland's at 1620.

dislocation. He further observed that although she demonstrated a full range of motion of the left hip, there was still localized tenderness over the greater trochanter and Mrs. Langsam still felt some discomfort in this area. Dr. Stein requested that Mrs. Langsam return for a re-check appointment in four weeks. The expense of these last two examinations, including x-rays, amounted to Eighty Dollars ($80.00).[4]

The items of damage included in the record and advanced at the evidentiary hearing on Wednesday, June 28, 1972, consisted of:

1. For plaintiff, Harry Langsam— the amount of the medical bills aggregating Four Hundred Six Dollars ($406.00); the undetermined amount of any future medical bills; and an amount representing the loss of his wife's consortium.

2. For plaintiff, Dora Langsam—the amount of lost earnings aggregating One Hundred Eight Dollars ($108.00); and an amount representing present, past, and future pain and suffering. In furtherance of plaintiff's, Dora Langsam's, claim of pain and suffering, counsel for the plaintiffs stated to the Court at the hearing that although she resumed her employment one month after the accident, she requires assistance from her co-workers to perform certain of her duties; also, she is unable to pursue bowling and bike riding which, prior to her accident, were hobbies of hers.

■ ■ Where the separate and distinct claims of two or more persons are joined in one suit, the jurisdictional amount requirement in diversity cannot be satisfied by an aggregation of their claims; even though their claims may arise from the same transaction. Payne v. State Farm Mutual Auto Insurance Company, 266 F.2d 63 (5th Cir. 1959); Robison v. Castello, 331 F.Supp. 667 (E. D.La.1971). Since the claims of plaintiffs, Harry and Dora Langsam, are separate, they may not be aggregated for the purpose of satisfying the jurisdictional amount. However, since the plaintiffs' claims are closely related and based on the same operative facts, if either of the plaintiffs meets the jurisdictional amount, we will extend jurisdiction to the other claim. Nelson v. Keefer, 451 F.2d 289, 291 (3rd Cir. 1971).

■ The test for determining whether alleged facts meet the requisite jurisdictional amount is the "legal certainty test," originally set out in St. Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938), and restated in Nelson v. Keefer, *supra*, 451 F.2d at 292, 293:

"[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

In *Nelson*, the Court went on to explain that the criteria is not what the plaintiff claims in his *addendum* clause of his complaint, but whether it appears to a "legal certainty" that he cannot recover the jurisdictional minimum.[5]

This Court's standard for determining whether facts alleged at a pretrial hearing supporting a complaint are legally sufficient to give rise to a claim based on diversity that is in excess of Ten Thousand Dollars ($10,000.00), is completely set forth in Nelson v. Keefer, *supra*. The lesson of that case was to admonish federal trial courts to more

---

4. See report and bill of Dr. Herbert Stein, dated July 24, 1972.

5. 451 F.2d 289, 293; In order to find a plaintiff's claim lacked "good faith," the Court must be able to conclude from the record before it that plaintiff cannot recover a sum by way of damages above the $10,000.00 jurisdictional floor. Id. at 293. A "legal certainty" does not amount to an absolute certainty. Id. at 293 n. 6; Jeffries v. Silvercup Bakers, Inc., 434 F.2d 310, 311–312 (7th Cir. 1970). See, Note, Nelson v. Keefer: Toward a More Effective Application of the Legal Certainty Test, 45 Temp.L.Q. 305 (1972).

**1344**

closely scrutinize questions involving jurisdictional amounts.[6]

■ It is fundamental that one seeking relief through the Court must carry throughout the litigation the burdens of showing he is properly in Court. "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof . . . by a preponderance of the evidence." Nelson v. Keefer, *supra*, 451 F.2d at 296; citing from McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

■ We first turn our attention to the claim of plaintiff, Harry Langsam. Looking at the circumstances surrounding this case, in a light most favorable to him , this Court concludes to a legal certainty that Harry Langsam's claim of loss for future medical expenses and his claim of loss of his wife's consortium, when added to his present special damages of Four Hundred Six Dollars ($406.00), do not meet the minimum jurisdictional requirement of this Court.

We now focus on the claim of plaintiff, Dora Langsam. She has incurred special damages amounting to One Hundred Eight Dollars ($108.00); the remainder of Ten Thousand Dollar ($10,000.00) jurisdictional claim is based on an amount for pain and suffering.

■ It was the intention of Congress that trial courts have discretion over determining the validity of allegations of pain and suffering or inconvenience. In *Nelson*, the Court noted that:

"Given the congressional intention to eliminate trials of unsubstantial diversity cases, and mindful that personal injury actions comprise a majority—

at least 60%—of diversity controversies, and that the intangible factor of pain, suffering, and inconvenience usually constitutes the largest single item of damages in personal injury claims, we have no difficulty in concluding that Congress intended that trial judges exercise permissible discretion prior to trial in adjudicating challenges to jurisdiction." 451 F.2d 289, 294.

■ Accordingly, this Court, in the exercise of its discretion, and upon consideration of all the evidence presented to the Court, including Mrs. Langsam's conclusionary statements [7] that she could not, after the accident, engage in certain of her hobbies such as bowling and bike riding, concludes that the item of damage attributable to pain and suffering, when added to her other damages, falls far below the level that could justify the return of a verdict in her favor in a sum in excess of Ten Thousand Dollars ($10,000.00).

On this point, the factual evidence surrounding Mrs. Langsam's claim for pain and suffering is conflicting. It is difficult to give more weight to one physician's report than another, especially in the absence of an opportunity to observe the physicians on the witness stand. If all this Court had to go on were the conflicting doctors' reports, it would be extremely difficult to conclude that the plaintiffs have not met their burden. But here there is more—the actions of the plaintiff herself. Since the release from her own doctor's care on November 20, 1970, until the date of the hearing (July 21, 1972), the plaintiff had not, of her own accord, seen fit to visit a doctor concerning the pain for which she now wishes to recover a substantial verdict. As a result of this

6. After noting the Congressional concern in this matter by reason of their raising the jurisdictional amount in 1958 from $3,000.00 to $10,000.00, the Court stated:
"Because the federal judiciary has been too timid to execute the congressional mandate in personal injury actions, we have all contributed to clogging the

dockets, monopolizing trial rooms, and committing the expense and energies of our system to a plethora of cases which do not belong in federal courts." 451 F.2d 289, 295.

7. Mrs. Langsam did not testify at the special hearing held on this motion to dismiss.

Court's Order setting a special hearing, plaintiffs' counsel urged her to visit Dr. Stein. Plaintiffs' counsel, at the special hearing on this motion, explained to the Court that the failure of the plaintiff to seek medical attention or treatment, except in anticipation of the evidentiary hearing on this motion, resulted because the plaintiff was a "silent sufferer." This may well be so. Possibly, standing alone, it would be entitled to great weight. However, in light of all of the other evidence surrounding the claim, including plaintiff's own doctors' reports, such an explanation, while consistent with a commendable capacity to tolerate discomfort is, in the light of human experience, believed by the Court to be more consistent with the triviality of the claim.

The only way we can determine the validity of intangible factors, such as pain and suffering, is by observing the objective facts, normally, as related to the Court through a physician. Jaconski v. Avisun Corporation, 359 F.2d 931, 934 (3rd Cir. 1966). To strongly abide by Mrs. Langsam's contention at this time that she suffered silently these past two years without seeking medical assistance, would be the simpler course to take. Such a course, however, does not comport with the views of the Congress and higher courts if one of our purposes at the trial court level is to exercise responsible and thoughtful discretion in keeping out of the Federal District Court cases that do not belong here.

For the reasons stated above, this Court concludes, to a legal certainty, that the plaintiffs cannot, on these facts, recover an amount above the jurisdictional minimum requirement of this Court.

■ That such a decision does not deprive plaintiff of his statutory right to a jury trial was adequately explained in Nelson v. Keefer, *supra*.[8]

---

8. 451 F.2d 289, 293; see also, Note, Nelson v. Keefer: Toward a More Ef-

