Barbara G. HOLZSAGER, Executrix of the Estate of Donald M. Holzsager, et al., Plaintiffs,

v.

Jack C. WARBURTON, Defendant.

Civ. No. 77–2257.

United States District Court, D. New Jersey.

June 12, 1978.

13. DEC's objections to the transfer were based solely on its contention that venue is proper in Massachusetts.

John J. Cullen, Ringwood, N. J. by Barry H. Evenchick, Livingston, N. J., for plaintiffs.

Shanley & Fisher, Michael J. Lunga, Newark, N. J., for defendant.

## OPINION

BIUNNO, District Judge.

This is a suit by decedent's widow, brought in her capacity of executrix of decedent's estate, in her own right individually, and as parent and natural guardian of four minor children of the marriage.

The Amended Complaint is in five counts. All of the claims asserted arise out of events that took place on December 14, 1974.

Taking as true the facts alleged, it appears that on that date the decedent was treated by the defendant, a New Jersey physician, at Valley Hospital in this State; that Dr. Warburton was employed by Valley Hospital pursuant to an agreement between them; that Dr. Warburton represented himself as competent to render medical care and treatment to members of the general public including decedent, but that in fact he failed to render "adequate, customary and necessary medical care or treatment" and was negligent in the care and treatment he did provide.

The first count alleges that as a result, the decedent sustained severe and serious bodily harm, injury, pain and suffering which resulted in his death "on or about" December 14, 1974.

The second count repeats the first, and alleges that by reason thereof the widow sustained various expenses including funeral and burial expense.

The third count repeats the first and second counts, and alleges that as a consequence the "next of kin" of decedent were deprived of his support and maintenance, companionship, guidance and instruction and have suffered pecuniary loss and damage.

The fourth count (which does not repeat the earlier allegations, but which is read as though it did), claims that the widow has sustained loss of decedent's companionship, services, society, emotional support and consortium, along with great mental anguish and suffering, all of which have caused pecuniary damages.

The fifth count (which does not repeat the earlier allegations but which is read as though it did) names four children of decedent and plaintiff: Seth, born February 6, 1964; Keith, born December 13, 1965; Laura, born July 21, 1967; and Craig, born March 19, 1970. It claims that these children have been deprived of decedent's support and maintenance, companionship, guidance and instruction and have accordingly suffered pecuniary loss and damages.[1]

Judgment is demanded as follows: Count 1, $5. million; Count 2, $10. thousand; Count 3, $5. million; Count 4, $2. million; Count 5, $5. million, all with interest from December 14, 1974.[2]

There is also a demand for "trial by jury of 12 persons", although for some time the General Rules of this district have set juries in civil cases at 6 persons.

Suit was begun when the original complaint was filed November 2, 1977, nearly 3 years after the events complained of. Service of summons and complaint on Dr. Warburton was effected November 15, 1977 in Laguna, California by the U.S. Marshal for the Southern District of California, with answer due within 35 days. By stipulation and order, the time to respond was extended to December 29, 1977.

On December 29, 1977, Dr. Warburton served and filed a notice of motion to dismiss the complaint or, in the alternative, to transfer venue to the Central District of California.

By stipulation and order of February 14, 1978, the motion was carried to February 27, 1978, at which time it was heard, and decision reserved pending further submissions to be made by March 20, 1978 (Tr. of 2/27/78, p. 32).

*Jurisdiction*

Neither the original nor the amended complaint states explicitly the basis for sub-

---

1. This count is asserted by the four children as infants suing through their mother as parent and natural guardian, F.R.Civ.P. 17(c). All were infants, but were not named as parties plaintiff when the original complaint was filed November 2, 1977. They were added as plaintiffs by the amended complaint filed February 16, 1978, by which time the eldest child, Seth, had turned 18 and was an adult who could claim in his own right.

2. These allegations of amounts of unliquidated damages are not permitted by General Rule 8–G of this district. The rule in the state court is the same, N.J.Court Rule R. 4:5–2.

ject-matter jurisdiction. Both assert that plaintiff is a citizen of New York and defendant of California. Both versions allege in par. 3 that the amount in controversy (exclusive of interest and costs) exceeds $10,000. These allegations are taken to claim jurisdiction by reason of diversity of citizenship, 28 U.S.C. § 1332.

*Analysis of the complaint*

Although subdivided into five "causes", the claims fall into the following categories: (1) a death claim under N.J.S.A. 2A:31–1, *et seq.*; (2) a personal injury claim (including pain and suffering) for damages suffered by the decedent up to his death, which survives death under N.J.S.A. 2A:15–3; (3) expenses incurred by the widow for funeral and burial expense; (4) a "common-law" claim for pecuniary loss to the widow as a consequence of the death; and (5) a "common law" claim for pecuniary loss to the four children as a consequence of the death. The claim for funeral expenses, as well as the two "common law" claims, embrace the same scope as the claim under the Death Act.

New Jersey is a common law state. The common law of England at the time of independence, was continued until altered by future law of the legislature by *N.J. Const., 1776,* Art. 22. A like provision was stated in *N.J.Const., 1844,* Art. 10, § 1. This pattern was continued by *N.J.Const., 1947,* Art. 11, § 1, par. 3.

At common law, as applied in New Jersey, the only causes of action that survived the death of a claimant were those that involved a property right, without regard to whether the action was based on contract or tort. See, Appendix, quoting § 239 of *Harris,* Pleading and Practice in New Jersey (New Jersey Law School Press, 1926), and cases cited there.

This common law rule was changed by statute, at least as far back as 1855, (2 Gen.Stat. p. 1426), later 1910 N.J.Comp. Stat. p. 2260, §§ 4 and 5, which became N.J.R.S.1937, § 2:26–9, and which is now N.J.S.A. 2A:15–3. And see, Appendix, quoting § 240 of *Harris, supra.*

Also, at common law as applied in New Jersey, there was not, and could not be, a cause of action for "wrongful death", as it is now known, because the claim could not have existed during the lifetime of the decedent and so was not reached by the "survival" statute. By statute, enacted at least as far back as N.J.P.L.1848, p. 151, later 1910 N.J.Comp.Stat. p. 1907, §§ 7 and 8, which became N.J.R.S.1937 § 2:47–1, *et seq.,* and which is now N.J.S.A. 2A:31–1, *et seq.,* an entirely new cause of action was created, the Death Act, which did not exist at common law in New Jersey. See, Appendix, quoting § 241 of *Harris,* supra.

As observed in the Appendix, quoting § 242 of *Harris, supra,* the "survival" statute (now N.J.S.A. 2A:15–3) dealt with causes that existed during a decedent's lifetime and which were allowed to survive death; while the Death Act created an entirely new cause of action that did not exist in decedent's lifetime but which sprang up with his death. The two causes of action "are entirely different", although practice rules allowed the joinder of both in a single complaint.

The 1926 *Harris* text is referred to because it, and the later edition keyed to the 1937 Revised Statutes (Baker, Voorhees, 1939) was the major New Jersey practice work, widely relied on by bench and bar, until the coming into effect of the new judicial system on September 15, 1948. Few contemporary reference works on local law have much discussion of the common law and statutory history in New Jersey.

The New Jersey Practice Series (West, 1962) has no comprehensive treatment of the subject as in the *Harris* text. Some references are found in Vol. 6 (Wills and Administration), e. g., §§ 1032, 1033, 1110, 1111, but there is no discussion of the Death Act in cases brought by the executor. Both the Death Act and the survival statutes are treated in Vol. 25 (Automobile Law and Practice), e. g., §§ 1447, 1449, but there is no discussion of the New Jersey common law background.

There is a discussion of the subject in Seltzer's New Jersey Practice (Matthew Bender, 1968) at 16–648 *et seq.* but with some confusion between the Death Act and the survival statute.

Both sides agree that, so far as New Jersey reported decisions and statutes go at this date, the "common-law" claims enumerated at the start of this analysis are not recognized.

*The Motion to Dismiss—Death Act Claim*

The motion to dismiss states no grounds. From the briefs and argument it is made plain that the ground relied on is failure to state a claim on which relief can be granted, F.R.Civ.P. 12(b)(6).

▇ The rationale is that a Death Act claim under N.J.S.A. 2A:31–1, *et seq.* fails to state a claim unless it is, or can be, alleged that suit was begun within two years after the event of death. The statute has been construed uniformly by the New Jersey courts to make that requirement an essential element of the cause of action itself, rather than a statute of limitations.[3]

▇ Since New Jersey law governs this claim, the ground is well taken in respect to the Death Act cause of action asserted.

*The Motion to Dismiss—"Common-law" claims*

These claims are asserted by plaintiffs in order to advance the proposition that a cause of action for wrongful death existed at common law in favor of those who suffer pecuniary loss from the death.

This proposition is grounded on *Moragne v. State Marine,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). That case allowed an action for wrongful death by the widow of a longshoreman aboard a vessel on navigable waters in Florida.

It had been held in *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), and followed in *The Tungus v. Skovgaard,* 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1956), that maritime law did not afford a cause of action for wrongful death.

In *Moragne,* the rule of *The Harrisburg* and cases following it was overruled. The issue came to a head because the Florida Supreme Court, on certification of the question to it by the Fifth Circuit Court of Appeals under a Florida law, ruled that Florida's wrongful death act did not provide a cause of action grounded on "unseaworthiness" of the vessel (which would impose absolute liability without regard to negligence.)

There is an extended discussion of the history and development of the English common law, its rationale for not providing a cause of action for wrongful death, Lord Campbell's Act, 9 & 10 Vict. c. 93 (1846), and the like, as well as various paths traced in the development of admiralty and maritime law along with key Acts of Congress in that field.

In brief, the opinion contends that the English common law was in error, and it relies on this to make a change in decisional maritime law.

---

**3.** This appears from two lines of cases. The first repeatedly holds that actions for wrongful death did not exist at common law in New Jersey and are of entirely statutory origin in that jurisdiction. This line runs from *Gross v. Delaware, etc., Co.,* 50 N.J.L. 317, 13 A. 233 (Sup.1888), through *Giardini v. McAdoo,* 93 N.J.L. 138, 107 A. 437 (E & A 1919) to *Schmoll v. Creecy,* 54 N.J. 194, 254 A.2d 525 (1969); 1955 Op. of the Attorney Gen'l (N.J.) F.O. No. 36.

The other line uniformly holds that the requirement that suit be brought within two years after death is an essential element of the cause of action, and not a statute of limitations. This line runs from *Lapsley v. Public Service*

*Corp.,* 75 N.J.L. 266, 68 A. 1113 (Sup.1908), through *Eldridge v. Philadelphia etc. Co.,* 83 N.J.L. 463, 85 A. 179 (E & A 1912) to *Marshall v. George M. Brewster & Sons, Inc.,* 37 N.J. 176, 180 A.2d 129 (1962).

One consequence of making the date of death the point at which the two year period begins is that it does not matter how long before that date the wrongful act occurred, so long as it can be shown that it resulted in death from a cause-and-effect standpoint, and so long as any "survival action" is not time barred. See *Goodman v. Mead Johnson,* 534 F.2d 566, 569–570, and ftn. 7\*\*

\*\* (CA–3, 1976).

This massive exercise was hardly necessary, since the case involved federal maritime law, not state common law or statutory law, and as the highest court in the federal system the Supreme Court was free to overrule its own earlier decisions.[4]

One thing it did not do, and could not do, was to overrule the common law or statute law of any state. Only the highest court of a state, its legislature, or the people speaking through a local constitution possess that power under our federal system. Certainly there can be no doubt that since *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937) it is beyond argument that when a federal court exercises diversity jurisdiction, it sits as a state trial court and applies state law.

Plaintiffs are thus asking this court, sitting as a state trial court, to alter New Jersey's common law and statute law by applying a rule borrowed from federal maritime law. Only the Supreme Court of New Jersey has the power to do so. It has not done so. It is this court's view that it is highly unlikely to do so.

Despite vigorous language suggesting a willingness to enter the legislative prerogative, as for example in the *dictum* in *Winberry v. Salisbury,* 5 N.J. 240, 74 A.2d 406 (1950), the fact is that the Supreme Court of New Jersey has carefully avoided true confrontations.

Two examples will suffice: one is that when it first adopted its Rules of Court, despite its constitutional authority to promulgate rules of practice and procedure, the new Supreme Court of New Jersey was careful not to supercede the procedural statute dealing with injunctions in labor disputes, N.J.S.A. 2A:15-31 to 59, see N.J. Court Rules R. 4:52-7.

The second example is in the field of charitable immunity. Within less than 3 months after decisions were handed down April 28, 1958, in *Dalton v. St. Luke's etc.,* 27 N.J. 22, 141 A.2d 273 (1958), in *Collopy v. Newark, etc.,* 27 N.J. 29, 141 A.2d 276 (1958) and in *Benton v. YMCA,* 27 N.J. 67, 141 A.2d 298 (1958) the Legislature enacted and the Governor signed on July 22, 1958, N.J.P. L.1958, c. 131, N.J.R.S. 16:1-48 to 53, restoring the common law doctrine of charitable immunity, subject only to causes of action by beneficiaries of charities with a limit of $10,000. The law carried an expiration date of June 30, 1959, and it was followed by N.J.P.L.1959, c. 90, N.J.S.A. 2A:53A-7 to 11, which took effect June 11, 1959.[5]

---

4. Despite the extensive discussion of the alleged error, followed everywhere, of the rule that the common law did not provide a cause of action for wrongful death, it is significant that the *Moragne* court did not attempt to decide or hold what the local law of any state was. In *The Tungus,* the majority held that when federal law provides no remedy for a death on state territorial waters, a remedy may be provided (as a federal remedy) by applying state law on wrongful death. It also held that when state law is so "borrowed", it is borrowed as a whole, "with whatever conditions and limitations the creating State has attached", 358 U.S. at 592, 79 S.Ct. at 506.

By going behind *The Tungus* and overruling *The Harrisburg,* what the court did was to provide a remedy under admiralty and maritime law without regard to the existence of any State law remedy and without regard to its conditions and limitations.

Since the States supposedly labored under an erroneous view of the common law, they created remedies by statute. Thus, even if it be said now that there really was an action at common law (which no one knew), the statutes replace it, and so the result at the State level is the same either way. No mention is made by the *Moragne* court of the Law of Louisiana, which is based on the civil law of the Napoleonic Code and not on common law at all.

If all this were not so, the *Moragne* court would have reached the same result by *holding,* which it did not, that Florida common law provided a wrongful death action based on unseaworthiness, and would have borrowed that law under *The Tungus.* The *Moragne* court did no such thing. It left unaffected the ruling certified by the Florida Supreme Court. See also, *Mobil Oil v. Higginbotham,* —— U.S. ——, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

5. There are other "causes of action" in respect to which legislative bodies have specified time requirements as part of the cause of action, rather than as a statute of limitations. Some are hybrid in that extension of the deadline is allowed, but with a second deadline. Others require pre-suit conditions, with time deadlines.

One example is N.J.S.A. 2A:40-5, which requires an action to recover payments on gaming losses to be brought within 6 months after payment.

■ For these reasons, the court concludes that the "common law" claims do not state a claim for wrongful death in favor of the widow or the children under the law of New Jersey.

*The Tolling Statute*

The underlying reason for attempting to assert "common law" claims for wrongful death is that if successful in doing so, plaintiffs would be free of the Death Act essential element that suit be started within two years after death. As common law claims, these would be governed by New Jersey's two-year statute of limitations, N.J.S.A. 2A:14–2, and this in turn could bring into play the tolling provisions of N.J.S.A. 2A:14–22, which applies to actions governed by N.J.S.A. 2A:14–2, but not to those under the Death Act, N.J.S.A. 2A:31–1, *et seq.*

This complex tour is significant because par. 9 of the amended complaint alleges that Dr. Warburton removed his residence from New Jersey "sometime before December 14, 1976". Under the terms of N.J.S.A. 2A:14–22, non-residence suspends the two-year statute of limitations.

> Another example is N.J.S.A. 39:6–65 which makes notice of accident and intention to claim, with a time limit, a prerequisite to suit against the Unsatisfied Claim and Judgment Fund Board.
> Suit against a public entity under New Jersey's Tort Claims Act must be preceded by an administrative claim, for which there are deadlines. N.J.S.A. 59:8–3 and 59:8–8.
> The federal Tort Claims Law also bars suit unless there has first been an administrative claim, 28 U.S.C. § 2675.
> Whether they create new actions or modify existing ones, legislatures have the authority to specify conditions and prerequisites that must be satisfied, as essential elements of the cause of action. Whatever freedom courts may have to modify decisional law, the equal status of these two branches of government acts as a restraint—a check and balance—on what one or the other might do alone.

**5A.** · *Whelan v. Young*, 28 N.J.Super. 543, 101 A.2d 64 (Law, 1953), rev'd on other grounds, 15 N.J. 321, 104 A.2d 678 (1954); *Miletta v. Doe*, 158 N.J.Super. 550, 386 A.2d 897 (Law, 1978).

**6.** Whether the tolling statute grounded on non-residence actually does apply in this case cannot be decided on the existing record. If the claimant is also a non-resident, N.J.S.A. 2A:14–

■ Having ruling that there is no "common law" action for wrongful death under New Jersey law, the tour ends where it began, with the Death Act, to which the tolling statute does not apply.[5A] The Death Act claim includes the claim for funeral and burial expenses, N.J.S.A. 2A:31–5.

The same is true of the tolling statute based on infancy, N.J.S.A. 2A:14–21. Like the one based on non-residence, that statute applies to causes governed by the two-year statute of limitations but not to those created by and grounded on the Death Act.

The legislative rationale in the case of the infancy statute is reinforced by the fact that a Death Act claim can only be filed by an executor (where decedent dies testate) or by an administrator ad prosequendum (where he dies intestate). The infancy of beneficiaries is not a disability affecting the only persons who can advance the claim.

■ The tolling statute based on non-residence, however, may apply to the cause of action for personal injury, including pain and suffering, claimed to have been sustained by decedent *before* his death.[6] This

22 evidently does not apply. See, e. g., *Zelson v. Thomfords*, 428 F.2d 1360 (CA–3, 1970); *Shapiro v. Friedman*, 132 N.J.L. 456, 41 A.2d 10 (E & A. 1945). But see, *Govan v. Trade Bank, etc.*, 109 N.J.Super. 271, 263 A.2d 146 (App. 1970).

The question is complicated by the fact that under the survival statute, N.J.S.A. 2A:15–3, only the personal representative may sue. The complaint does not say whether the widow was appointed executrix by a New Jersey court, or by a New York court. If appointed in New York, the appointment has no extraterritorial force, Story, Conflict of Laws, p. 425, and ordinarily an ancillary appointment in New Jersey would be needed to bring suit here.

The need for ancillary appointment has been obviated by various statutes over the years. See, N.J.P.L.1879, p. 28, as construed in *Hayes v. Pratt*, 147 U.S. 557, 13 S.Ct. 503, 37 L.Ed. 279 (1892). The same act was amended by N.J.P.L.1887, p. 154, and was construed in *Beaumont v. Beaumont*, 144 F. 288 (CA–3, 1906). The same law was reenacted by N.J.P. L.1896, p. 173 N.J.Comp.Stat.1910, p. 2265, § 21, and was construed in *Public Service etc. v. Post*, 257 F. 933, at 937 (CA–3, 1919).

In the 1937 N.J.Revised Statutes, this provision became N.J.R.S. 2:26–26 and finally, with

cause of action, which could not be asserted at common law, now survives death under N.J.S.A. 2A:15–3. This "survival claim", which is governed by the two-year limitation in N.J.S.A. 2A:14–2, may be tolled by non-residence under N.J.S.A. 2A:14–22. In respect to the survival claim, then, the motion to dismiss for failure to state a claim is not well grounded.

*The survival claim*

The allegedly improper medical treatment was on December 14, 1974, and decedent died later the same day. See Tr., 2/27/78, pp. 2 to 3.

Although the amended complaint asserts very large sums as unliquidated damages, contrary to General Rule 8–G of this District, it appears to a legal certainty that the survival claim cannot reach the jurisdictional level of more than $10,000., required by 28 U.S.C. § 1332.

Over the years since the first Judiciary Act of 1789, Congress has steadily increased the jurisdictional amount requirement from $500. to the present $10,000. (which some may argue reflects the ravages of inflation). The purpose of Congress in doing so

"was to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction"

and in doing so, Congress determined that cases involving lesser amounts should be left to be dealt with by the state courts. *Snyder v. Harris,* 394 U.S. 332, at 339–342, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

 Where it appears clear to a legal certainty that the jurisdictional minimum cannot be reached, an exaggerated or frivolous allegation of amount which is without foundation will not serve to provide jurisdiction, *Gray v. Occidental, etc.,* 387 F.2d 935 (CA–3, 1968). See, also, *Langsam v. Minitz,* 346 F.Supp. 1340 (D–Pa., 1972), aff'd. 481 F.2d 1399; *Fidelity, etc. v. First Nat'l, etc.,* 397 F.Supp. 587 (D–N.J., 1975), appeal dismissed 538 F.2d 319.

Dismissal for lack of jurisdiction is authorized whenever that fact appears to the court, F.R.Civ.P. 12(h)(3).

*Disposition*

The claims for damages for wrongful death,, whether grounded on the Death Act or on the alternative "common law" theory will be dismissed for failure to state a claim on which relief can be granted.

The survival claim will be dismissed without prejudice for lack of diversity jurisdiction.

The motion to transfer venue to California is denied as moot.

Since the matter of lack of jurisdiction was not dealt with by the briefs, plaintiffs will be afforded an opportunity to serve and file sworn itemized proofs, on or before June 2, 1978, establishing the components making up the survival claim, their amounts, and how the amounts were arrived at.

On the other hand, plaintiffs may prefer to file a fresh complaint on the survival claim in the New Jersey courts, which have undoubted jurisdiction. This obviously can be done because the two-year limitation on the survival claim is expressly tolled on the ground of non-residence of defendant, if it be a fact.[7]

the revision effected by N.J.P.L.1951, c. 344, has now become N.J.S.A. 3A:12–7 to 9. And, see N.J.Court Rule R. 4:96–5.

Presumably, the statutory authority to file foreign letters substitutes for the issuance of ancillary letters; and security for costs is required. But what is not clear is whether a filing of the letters here clothes the ancillary New Jersey estate (composed of the "survival" action and any assets recovered therefrom) as a "resident" for the purpose of avoiding the effect of "non-residence" of the plaintiff on the tolling statute. The same question exists if the estate were a New Jersey one, but the executor is a non-resident.

7. Another tolling aspect involves the New Jersey court-developed "discovery" rule. Under this rule, the event from which the running of the statute of limitations begins is not the "accrual" of the cause of action (as the statute of limitations says), but the "discovery" of facts disclosing that the cause of action may exist. See, e. g., *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973); *Fox v. Passaic General Hospital,* 71

Entry of judgment will be stayed pending the submission called for.

*Procedure*

The briefs on both sides recited many factual details far beyond the pleadings. A copy of the hospital record and autopsy report was also available, Tr. 2/27/78, p. 8, 1.3 to p. 9, 1.19; p. 11, 1.21 to p. 12, 1.19; p. 31, 1.11 to p. 32, 1.1.

The factual basis for the motion to transfer venue to California was supported only by a letter attached to a brief.

In short, while quite a few facts were dealt with in the briefs and at argument, the court could only consider the facts alleged in the complaint, taking them as true.[8] There was no answer and no discovery. There were no affidavits with the moving papers or in the response.

The motion would better have been brought on after answer and at least on affidavits, and perhaps on request for admission of facts not in dispute, and then on motion for summary judgment.

Mention was made of another lawsuit arising from the same incident, Tr. 2/27/78, p. 6, 1.21 to p. 21, 1.20.

Since the court takes judicial notice of its own records, it appears from them that a suit was in fact begun within the two-year Death Act period in the New York state courts, against Valley Hospital alone. The suit was removed to federal court in the Southern District of New York, and then transferred to this district. Judge Meanor returned the case to the Southern District with the observation that there could be no federal diversity jurisdiction in view of the $10,000 limit set by N.J.S.A. 2A:53A–8. Presumably the Southern District will remand that collateral case to the New York courts.

It may well be that the attorneys had gained considerable knowledge about the facts not in dispute from that separate action; yet, what they learned was not part of the record in this case, though it might easily have been.

### APPENDIX

HARRIS, "PLEADING AND PRACTICE IN NEW JERSEY" (N.J.Law School Press, 1926).

### EXCERPTS

§ 239. SAME—SURVIVAL OF ACTIONS AT COMMON LAW.

At common law only such actions survived as involved a property right. Whether the action was based upon a contract or upon a tort was not the deciding element. The crucial test was whether the estate of the wrong-doer derived a benefit or that of the injured suffered a loss from the breach of the contractual or tortious duty. The estate so affected did not die, and the personal representative, in whose possession it was, was either entitled to reclaim the loss or obliged to surrender the benefit unjustly acquired. As a result, a contract action for a breach of a promise to marry did not survive, since the injury was purely personal. On the other hand, a tort action for conversion of a chattel did survive, as the estate of the wrongdoer was enriched by the addition of such chattels.[28]

But even in the case of an action which ordinarily was survivable at common law, a situation could arise in which such an action could not be enforced as against a particular executor or administrator. We have reference to joint obligors. The personal

N.J. 122, 363 A.2d 341 (1976). The rule is constructed by saying that the cause of action does not "accrue" until the claim facts are, or should have been "discovered".

In any event, it would be an extremely rare set of circumstances in which a later "discovery" claim could be made in a case where death occurs on the same day as the wrongful act. The fact of death is a definite fact and a known fact, and the means for discovery are available by autopsy. *Accord: Burd v. N. J. Bell Tel. Co.*, 76 N.J. 284, 386 A.2d 1310 (1978).

**8.** *Young v. I.T. & T.*, 438 F.2d 757 (CA–3, 1971).

**28.** *Ten Eyck v. Runk*, 31 N.J.L. 428; *Hayden v. Vreeland*, 37 N.J.L. 372; *Cooper v. Shore Electric Co.*, 63 N.J.L. 558, 44 Atl. 633; *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558; *Cunningham v. Jaques*, 19 N.J.L. 42.

representative of a deceased joint obligor could not be joined as a defendant with the surviving obligors at common law.[29]

## § 240. SAME—SURVIVAL OF ACTIONS UNDER PRESENT LAWS.

We are now confronted with the statute permitting the personal representative of a deceased joint obligor to be sued separately on a joint obligation,[30] and with the more modern rule of our present practice permitting a personal representative of a deceased co-contractor of a joint contract to join as plaintiff or be joined as defendant with the survivors.[31]

As to those actions which did not survive at all at common law, our statutes now permit an executor or administrator to sue or be sued in an action for any trespass done to the person or property, real or personal, of their testator or intestate, as if he or she was living.[32] The foregoing statute, being remedial in character, the courts have endeavored to construe liberally.[33] The word "trespass" has been held to be equivalent to "tort". Every action, therefore, based upon a tort, to a person or property survives at the present.[33] As an example, an action for seduction of the daughter may be maintained, after the death of her father, by his personal representative.[34] An action for personal injury resulting from negligence or for deceit survives the death of the wrongdoer or that of the party wronged.[35] On the other hand, an action for libel and slander, not being an injury to the person, and no special damages to property being alleged, has been held not to survive.[36] An action for a breach of promise to marry, not being a tort action, does not come within the operation of the remedial statute.[37] The common law rule, therefore, which did not permit the two foregoing actions to survive, still prevails.[37]

## § 241. SAME—THE DEATH ACT.

In the preceding section, statutes creating remedies for the enforcement of rights which were already in existence during the life of the testator or intestate were discussed. We now wish to consider a statute which created a new right in the personal representative which did not, and could not, exist during the life of his testator or intestate.[38] We have reference to the so-called Death Act.[39] The personal representative may sue in his own name for the benefit of the surviving husband or wife and next of

---

**29.** *Sigler v. Interest*, 3 N.J.L. 295; *Fisher v. Allen*, 36 N.J.L. 203; *Hedden v. Van Nest*, 2 N.J.L. 79.

**30.** C.S. 3777, § 3; *Fleming v. Reed*, 77 N.J.L. 563, 72 Atl. 299; *Thompson v. Johnson*, 40 N.J.L. 220.

**31.** S.C.R. 1919, sec. 16.

**32.** C.S. 2260, §§ 4 and 5.

**33.** *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558; *Ten Eyck v. Runk*, 31 N.J.L. 428; *Hackensack Trust Co. v. Vanden Berg*, 88 N.J.L. 518, 97 Atl. 118 [148]; *Primmer v. Baldwin*, 1 [N.J.]Misc. 95; *Newman v. Saunders [Sanders]*, 89 N.J.L. 120, 97 Atl. 782.

**34.** *Noice v. Brown*, 39 N.J.L. 569.

**35.** *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558, reversing [100 N.J.L. 27], 124 Atl. 710; *Tichenor v. Hayes*, 41 N.J.L. 193; *Weller v. Jersey City Railway Co.*, 68 N.J.E.[L.] 659, 61 Atl. 459; *Primmer v. Baldwin*, 1 [N.J.]Misc. 95; *Pushcart v. N. Y. Shipbuilding Co.*, [86] 85 N.J.L. 444, 92 Atl. 81.

**36.** *Alpaugh v. Conkling*, 88 N.J.L. 64, 95 Atl. 618; *Crane v. Ketcham*, 83 N.J.L. 327, 84 Atl. 1052; *Hodge v. Witzler [Wetzler]*, 69 N.J.L. 490, 55 Atl. 49.

**37.** *Hayden v. Vreeland*, 37 N.J.L. 372.

**38.** *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558.

**39.** C.S. 1907, § 7, p. 1908, § 8, as amended by P.L.1913, p. 586.

kin to recover damages resulting from the wrongful death of the testator or intestate.[40] This right did not exist at common law and is purely statutory.[41] The personal representative and not the beneficiaries have control over the foregoing cause of action.[42] If the testator appointed an executor in his will, he is the one who can sue under the Death Act. In the absence of such an executor, an ordinary administrator cannot act, but the court will appoint a special administrator ad prosequendum to prosecute this action.[43] Since the right is purely statutory, every requirement of the Death Act must be complied with before the right to sue under it comes into being. Where the wrongful death has occurred in another state, the right to sue even in this state must be measured by the statute in force in that particular jurisdiction. The person, therefore, entitled to sue in the state in which the death occurred must appear as plaintiff in our courts.[44]

§ 242. SAME—RELATION BETWEEN DEATH ACT AND THE ACT PERMITTING SURVIVAL OF ACTIONS.

The object of the Death Act is to create a right of action in favor of certain specified persons.[45] The purpose of the Act permitting the survival of certain actions is to extend the life of a right or a liability beyond the death of the testator or intestate in favor of or to the detriment of his estate. The two causes of action are entirely different. Under the present liberal practice as to the joinder of different causes of action, an executor may join in one action a count for damages resulting from wrongful death under the Death Act with a count for damages sustained by the decedent during his lifetime by reason of injuries from which he subsequently died.[46] This pronouncement is most important and many good lawyers have failed to take advantage of the opportunity.

The Act permitting certain actions to survive extends not only to common law but to all statutory rights of action which come within its purview.[47] A right of action under the Death Act survives against the personal representative of a deceased tort feasor, provided the action was brought within twenty-four months after the death of the injured party.[48]

**40.** C.S. 1908, § 8, as amended by P.L.1913, p. 586.

**41.** *Giardini v. McAdoo*, 93 N.J.L. 138, 107 Atl. 437; *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558; *Grosso v. R.R.Co.*, 50 N.J.L. 317, 13 Atl. 233; *Cooper v. Shore Electric Co.*, 63 N.J.L. 558, 44 Atl. 633; *Murphy v. Freeholders*, 57 N.J.L. 245, 31 Atl. 229.

**42.** *Manns v. Sanford*, 82 N.J.L. 124, 81 Atl. 491; *Fitzhenry v. Traction Co.*, 63 N.J.L. 142, 42 Atl. 416.

**43.** P.L.1917, p. 531; *In Re Post*, 89 N.J.E.[Eq.] 526, 104 Atl. 652; *Public Ser. Elec. Co. v. Post* [CA3], 257 Fed. 933.

**44.** *Lower v. Segal*, 59 N.J.L. 66, 34 Atl. 945; *Rankin v. Railway Co.*, 77 N.J.L. 175, 71 Atl.

55; *Giardini v. McAdoo*, 93 N.J.L. 138, 107 Atl. 437.

**45.** *Giardini v. McAdoo*, 93 N.J.L. 138, 107 Atl. 437.

**46.** *Soden v. Traction Co.* [101 N.J.L. 393], 127 Atl. 558, reversing [100 N.J.L. 27], [124] 121 Atl. 710.

**47.** *Hackensack Trust Co. v. Vanderberg [Vanden Berg]*, 88 N.J.L. 518, 97 Atl. 118 [148]; *Cooper v. Shore Elec. Co.*, 63 N.J.L. 558, 44 Atl. 633; *Newman v. Sanders* [89 N.J.L. 120], 97 Atl. 782 (action for permissive waste survives); *Soden v. Traction Co.*, 127 Atl. 558.

**48.** *Hackensack Trust Co. v. Vanderberg [Vanden Berg]*, 88 N.J.L. 518, 97 Atl. 118 [148].